**BELLOWS v. PORTER et al.**

No. 14683.

United States Court of Appeals
Eighth Circuit.

Jan. 29, 1953.

**430**

Kenneth E. Bigus, Kansas City, Mo. (John E. Honsinger, Krigel, Honsinger & Bigus, Ralph M. Jones and Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, Mo., were with him on the brief), for appellant.

Arthur J. Doyle, Kansas City, Mo. (Spencer, Fane, Britt & Browne, Kansas City, Mo., were with him on the brief), for appellees.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

GARDNER, Chief Judge.

Appellant, who was plaintiff below, alleged in his complaint two causes of action. In his first cause of action he sought specific performance of a written option to purchase his stock in the Electra Manufacturing Company. He alleged that at the times mentioned in the complaint he was a stockholder of Electra Manufacturing Company and that defendants were likewise stockholders of said company and the officers and directors thereof; that in March, 1946, plaintiff became the owner of one-third of the stock of the company, and defendant J. F. Porter became the owner of the other two-thirds of said stock; that Porter secured from plaintiff a written option by the terms of which Porter acquired the privilege of purchasing plaintiff's stock within ten years from the date of option at the book value of the stock; that as a part of their agreement plaintiff was to become president, director and manager of the corporation but Porter took from plaintiff his written resignation, undated, as president, director and manager, which Porter had the right to invoke at any time. It is then alleged that the written option was modified by a contemporaneous oral agreement that in the event that Porter should exercise his right to file plaintiff's resignation as president, director and manager of the corporation, he would simultaneously exercise his (Porter's) option to purchase plaintiff's stock. Plaintiff alleged that he had fully performed all the requirements of the contract on his part to be performed but that defendant Porter had accepted and filed plaintiff's resignation as president, director and manager, but has failed and refused to purchase and pay plaintiff the book value of his stock, the value of which is alleged to be approximately $30,000. He asks specific enforcement of the contract.

In his second cause of action plaintiff sought damages for an alleged dilution of the book value of his stock as the result of the refinancing of the Electra Manufacturing Company by the issuance of an additional one thousand shares of common stock; that this refinancing was unjustified, was not in good faith, nor for the interest of the corporation, but for the benefit of defendant J. F. Porter as majority stockholder. By this cause of action plaintiff sought to recover damages in the sum of $20,000 besides punitive damages.

Defendant's answer denied that there was any modification of the written option agreement; denied that there was any bad faith in the refinancing of the corporation; alleged that plaintiff had been given a preemptive right to purchase his portion of the new stock.

While one cause of action was in the nature of a suit in equity, the other was an action for damages and a jury was impanelled to try the issues. At the close of all the evidence the court dismissed the first cause of action for want of equity and directed the jury to return a verdict in favor of defendants on both causes of action. From the judgment entered plaintiff prosecutes this appeal alleging in substance:

that (1) the court erred in dismissing the first cause of action for want of equity; (2) the court erred in not admitting plaintiff's Exhibit 3 as evidence of an independent fact pertinent to the issues; (3) the court erred in excluding certain evidence proffered by plaintiff as to charges of Methods Engineering Counsel for the same services performed by plaintiff; (4) the court erred in refusing to submit to the jury the issue of defendants' alleged guilt in defrauding plaintiff by diluting the value of his stock.

■ Although a jury was impanelled the first alleged cause of action was triable to the court. In this cause of action plaintiff sought the specific enforcement of a contract. Generally speaking, a court of equity will not specifically enforce a contract unless it is so certain and definite in its terms as to leave no reasonable doubt as to what the parties intended. In the instant case plaintiff by his pleadings, claimed that the written option was modified by a contemporaneous oral agreement. We shall first consider the testimony produced by plaintiff on this issue. The plaintiff did not testify definitely that there was any such oral agreement between the parties. Referring to his conversation with Porter relative to the written option plaintiff testified:

"Yes, this enables you Mr. Porter to buy my stock at the book value when you wish to do so, but I don't see how it protects me if our connections were severed in order for me to get the book value for my stock. I was assured then that he believed in an incentive plan and definitely did not want a manager of the business without incentive, and about the only way he could do it would be for this manager to have some of the common stock of the company; he couldn't give this much more to someone else without losing control of the business himself, the common stock of the business, so therefore in order to take care of my successor he would need to have my stock. * * * Again he assured me of his intent of taking up the option simultaneously with my leaving, and the need for it."

■ This alleged conversation took place after the written contract had been signed. Porter made no promises that would effect a change in their written contract. He simply, in the words of the plaintiff, "assured" him of his then plan to take up the option if and when he made effective the resignation. A mere assurance that a party may act in a certain matter, standing alone, can not be converted into a contract. The rule is stated in Williston on Contracts, Vol. 1, Sec. 26, page 32, as follows:

"Since an offer must be a promise, a mere expression of intention and general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer."

The applicable principle is stated in Page on Contracts, Vol. 1, 2nd Ed., Sec. 77, as follows:

"A declaration of intention to act in a certain way which does not show that the party who makes such declaration promises to act in such a way or intends to incur legal liability obliging him to act in such a way is not an offer which can be accepted so as to make contract."

The expression of an intention to do an act is not an offer to do it. Porter did not promise to do or to refrain from doing anything. He simply forecast what he might do in the future. The transaction is lacking in the elementary essentials of a binding contract. In any event it is not so accurate and certain as to warrant a court of equity to require its specific performance. If, however, the words of the parties be construed to constitute an oral agreement that Porter would, if he filed plaintiff's resignation, simultaneously exercise his option to purchase plaintiff's stock, then such an agreement made a very substantial change in the written contract between the parties. Under the written contract Porter had the right at any time within ten years to purchase this stock at its book value. He was, however, absolutely under no obligation to do so. If this oral agreement as construed by plaintiff be given effect he would be required to

exercise it, not within the ten years provided by the written contract, but at the time he might accept plaintiff's resignation.

 The parol evidence rule is one of substantive law and as the transaction here involved took place in the State of Missouri the law of Missouri is controlling. The trial court was of the view that the evidence of this so-called subsequent oral agreement could not be given the effect of modifying the written contract and we think this view is sustained by the decisions of the appellate courts of Missouri. Hickman v. Hickman, 55 Mo.App. 303; Rigler v. Reid, 186 Mo.App. 111, 171 S.W. 952; Fanchon & Marco Enterprises v. Dysart, Mo.App., 193 S.W.2d 953. In the first cited case it was held that a contemporaneous oral agreement that a grantor in a general warranty deed was to remain in possession of the premises and enjoy the profits thereof was inconsistent with the deed itself which purported to convey the title and was in contradiction of the covenants of the deed. In the course of the opinion the court said:

"The operative effect of the deed was, of course, to place the grantees in the possession and profits of the land; the evidence admitted was a restriction of this effect of the deed. And having this effect it should not have been admitted. The rule permitting evidence to vary the consideration of a deed is limited to such evidence as is consistent with the operative effect and purpose of the deed. 'Its legal import can not be varied.'"

In Rigler v. Reid, supra, it was contended that plaintiff had been given the right to rescind a contract to purchase corporate stock at the time he purchased the same. In the course of the opinion the court said [186 Mo.App. 111, 171 S.W. 954]:

"Obviously this is but an attempt to vary by parol the terms of a written contract plain and explicit on its face. The evidence concerning this matter is to be rejected entirely as of no avail here."

In the instant case plaintiff claimed that Porter who held a written option to purchase plaintiff's stock made a contemporaneous oral agreement requiring him to exercise the option upon acceptance of plaintiff's resignation. In effect he asked for specific performance of the option agreement as altered, varied and modified by the alleged oral agreement. The option was a formal, written document signed by both parties. As has been observed it placed no duty on Porter to purchase the stock upon the happening of any contingency, nor at all. The alleged oral agreement materially changed this option by requiring Porter to purchase the stock upon the happening of a certain contingency. In Fanchon & Marco Enterprises v. Dysart, supra [193 S.W.2d 955], the court considered the effect of an alleged oral agreement modifying an option agreement to purchase certain stock. The agreement did not require the owner of the stock to offer it for sale but provided that if the owner should "desire to sell such stock", then the plaintiff would have the right of first refusal. In that case plaintiff sought specific performance of the agreement as he claimed it had been modified by a contemporaneous oral agreement requiring the owner to offer the stock for sale. Plaintiff there contended that at the time of the execution of the option agreement the owner orally agreed with the plaintiff that upon acquisition of the stock the owner would offer it for sale. The court held that "such an agreement would have been at variance with the plain and unambiguous wording of the contract as written and executed by the parties, which must prevail."

 It is argued by plaintiff that evidence of the alleged contemporaneous agreement was admissible as showing the consideration for entering into the option agreement. Of course, the actual consideration for a contract may usually be shown by parol evidence, provided, however, that such proffered evidence is not contradictory of the executory provisions contained in the contract. Watkins Salt Co. v. Mulkey, 2 Cir., 225 F. 739, 744. In the course of the opinion in that case it is said:

"It is true that for some purposes parol evidence can be introduced to

explain or amplify the consideration recited in a written contract; but this exception to the general rule does not permit proof of an oral agreement for the purpose of imposing an affirmative obligation on one of the parties of which there is no indication or suggestion in the written contract. If that were to be permitted on the theory of an inquiry into the consideration of the contract, the rule respecting the finality of written contracts would obviously be abrogated."

The alleged oral agreement here would impose an affirmative obligation upon Porter in direct contradiction to the positive terms of the written contract. We conclude that there was no error in dismissing plaintiff's first cause of action for want of equity.

■ Plaintiff, in his points to be argued, charges error in not admitting in evidence certain exhibits and in excluding testimony as to certain charges of another concern for the same character of services performed by plaintiff. These assignments do not refer to any page or pages of the record where the ruling may be found. The questions propounded are not reproduced and what objections were interposed are not shown, as required by Rule 11 of this Court. These points to be argued simply invite the Court to search the record for error and must therefore be disregarded.

It is next urged that the court erred in directing a verdict in favor of the defendants on the second cause of action. In this cause of action plaintiff sought damages for an alleged dilution of the book value of this stock as a result of the refinancing of the Electra Manufacturing Company by issuing an additional 1,000 shares of common stock. It is charged that such refinancing was unnecessary, was not in good faith nor in the interest of the corporation, but was done wrongfully at the insistence of the defendant J. F. Porter, a majority stockholder, for his own interest and profit. A review of the financial condition of the company at the time of the so-called refinancing shows that the company had paid no dividends but had operated at a net loss of $43,052 in 1948 and at a net loss of $35,587 in 1949. Profit and loss statements indicated substantial annual net losses. Its assets consisted mainly of inventory, machinery, jigs, dies and tools. Its current liabilities amounting to approximately $183,000, consisted mainly of notes payable on demand which if demanded would have resulted in a forced liquidation. There was no evidence that such refinancing was not required, nor is there any evidence that it was not done in the interest of the corporation. Neither was there any evidence of bad faith nor that the refinancing was to the profit of the defendant Porter, and there was no evidence of fraud or breach of trust. Porter as a majority stockholder had control of the corporation. When the new stock was issued plaintiff was offered the opportunity of purchasing a one-third of it, which was his derivative right. This he declined to do and Porter purchased the entire block of stock and in payment released the corporation's indebtedness to him of $100,000. It is, however, urged that plaintiff was not financially situated so that he could purchase the stock allottable to him. The trial court in referring to this argument suggests that if the stock was as valuable as plaintiff claims, it could have been pledged as security, thus enabling plaintiff to make the purchase, but regardless of this suggestion we think the transaction was certainly regular on its face and there was no evidence of breach of trust or of fraud by defendants. In Gamble v. Queens County Water Co., 123 N.Y. 91, 25 N.E. 201, 202, 9 L.R.A. 527, the New York court considered a case wherein plaintiffs as minority stockholders sought relief against the majority. In the course of the opinion in that case the court, among other things, said:

"* * * To warrant the interposition of the court in favor of the minority shareholders * * *, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest

**434**

desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests."

Plaintiff points to the fact that Porter purchased the additional 1,000 shares of stock as a breach of trust. There is no doubt that the company was relieved of an indebtedness of $100,000 by the issuance of this stock, nor is there any suggestion that plaintiff would have purchased any part of the 1,000 shares; in fact, he declined to make such purchase. We think plaintiff could not hope to recover unless he established that the purchase of this stock by Porter was a breach of trust and tainted with fraud. The mere circumstance that the stock was issued to the majority stockholder was not of itself sufficient to invalidate the transaction. Dunlay v. Avenue M Garage & Repair Co., 253 N.Y. 274, 170 N.E. 917; Schramme v. Cowin, 205 App.Div. 20, 199 N.Y.S. 98, 100. In Schramme v. Cowin, supra, the court among other things said:

"Some disposition must be made of the stock not taken under the right of participation, and the stockholders have a right to fix the terms of subscription and distribution of the stock not subscribed for to suit themselves, and as they desire, for the best interests of the corporation which they own, subject only to the right of each stockholder to a pro rata participation in the increase. * * *

"That some portion of the avails of the increased capital will be used to pay honest obligations of the company, even if to some extent those obligations are owed to stockholders other than this plaintiff, shows no lack of good faith".

The contention that plaintiff was not financially able to purchase any of this additional stock did not impress the trial court as a substantial contention. The same question was apparently urged in Schramme v. Cowin, supra, and in referring to plaintiff's financial inability the court said:

"The plaintiff claims that this procedure on the part of the majority stockholders is for the purpose of depleting his interest in the corporation, because, he states, it is well known to the others that he has not the means to buy his pro rata share. * * * If the stockholder is not so situated as to take and pay for the stock himself, he is entitled to sell the right to anyone who could."

We think there was no substantial evidence to support plaintiff's allegations in his second cause of action and hence the court committed no error in directing a verdict in favor of the defendants. The judgment appealed from is affirmed.