Herbert D. BIGGS and Edith N. Biggs, Respondents,

v.

Elvira MOLL, Appellant.

No. 55152.

Supreme Court of Missouri, Division No. 2.

March 8, 1971.

Granville L. Gamblin, St. Ann, for respondents.

Kappel, Neill, Staed & Wolff, Richard Wolff, St. Louis, for appellant.

HENRY I. EAGER, Special Commissioner.

The plaintiffs here seek specific performance of a contract for the sale of real estate. The trial court decreed specific performance. Defendant's motion for new trial was overruled by lapse of time and she appealed in due course. We have jurisdiction because title to real estate is involved. Arnold v. Smith et al., Mo., 436 S.W.2d 719, Cossairt v. Reich, Mo., 370 S.W.2d 291. Since the case is here for our original review on the facts, they will need to be stated in some detail.

Defendant, a widow, owned a tract of land in Jefferson County; her counsel says that it consisted of approximately 93 acres; a plat seems to show it as 73.7 acres. The difference is immaterial here. The tract was divided by Highway MM which ran from southeast to northwest through it. The northerly part was irregular in shape and would appear to contain slightly less than half of the total acreage. Defendant had known a real estate broker by the name of Edward Cooperman, and in years past she had listed this property for sale with him, but none was sold. On October 8, 1966, Cooperman obtained from her, as he testified, a listing of the tract now in question, described as 93 acres, at a price of $46,500. Defendant's name appears on this card, printed in red pencil in two places, as "MRS MOLL"; one of these places was that for the signature of the owner. She denied that she placed it there and denied that she ever owned a red pencil. Cooperman testified that he saw her place her name on the card while they were out at the location of the property. He and his sales force showed the place and apparently got no bids at or near $500 an acre for all or any part, until approximately September 9, 1967. At or about that time Miss Helen Sullivan, a saleswoman of Cooperman, told defendant that she had a purchaser (the present plaintiffs)

and talked to her several times. This led up to the contract now in controversy. The present difficulty arises largely out of the conversations between defendant and Miss Sullivan and the description written into the contract by Miss Sullivan. That description included "a tract of ground situated on the No East side of MM highway, being a minimum of 25 acres," except for a reservation of 20 feet at the west end (for a roadway or access). The price fixed was $12,500. Defendant insists that she only sold 25 acres. The plaintiffs insist that she contracted to sell the whole tract as described. The contract was largely printed and was called "Receipt for Earnest Money," but it recited an agreement to sell, certain terms of financing, "property to be surveyed," and the statement of a closing date of October 30, 1967, along with sundry other provisions of a contract of sale. Defendant did not sign the contract on its face as "owner," but she did sign an "Agreement" and an "Amendment" on the back. The former stated that the sale price was $12,500 (which may mean cash) and otherwise confirmed the contract terms; the "Amendment" restated the description and the price as follows: "It is herewith agreed to convey this acreage contained within the bounds, as evidenced by survey, bordered by existing Eastern line, county road and the Northern line to a point 20 feet East of the property line of Lee Moll. Said Western boundary to parallel Eastern Boundary and join county road to Northern boundary. Price for acreage contained herein to be $12,500.00." Plaintiffs signed in three places. No one makes a point of any *irregularities* in the contract except for the description. The controversy primarily concerns the amount of land thus agreed to be conveyed, but incidentally concerns the delay beyond October 30, 1967, in plaintiffs' tender of performance.

At some unstated date thereafter defendant went to see Mr. Theodore Hurtgen, a registered surveyor, about "preparing a description." She obviously ordered a survey

eventually, for Mr. Hurtgen and his associates made and furnished a survey which was received in evidence; this showed that the tract so described contained 34.96 acres. Mr. Hurtgen testified that he met defendant on the ground and that she pointed out "what she wanted done," that he heard no discussion of 25 acres, and that he surveyed the land as directed. The survey was dated October 23, 1967, but it was probably delivered some time thereafter to the abstract company or to Cooperman's office. It is indicated that the surveyor was delayed by his efforts to get defendant to meet him on the ground to point out the exact tract. The tract which was thus surveyed was that which the plaintiffs were trying to buy, i.e., everything north of the road except a strip 20 feet wide at the west end. Cooperman testified that defendant had pointed out to him, on the ground, the boundaries of the tract.

A certificate of title was ordered, but it could not be issued until a valid legal description was obtained from the survey. The certificate was ordered by an employee of Cooperman after receiving the survey. It was finally issued under date of November 8, 1967, and was delivered at some time thereafter, presumably to Cooperman. The certificate recited one deed of trust, recorded on February 15, 1967 (John Girlic beneficiary), in the amount of $10,950. In the meantime, the closing date (October 30, 1967) fixed in the contract had passed. Cooperman testified that he talked to defendant about a "postponement" before that date. Miss Sullivan testified: that she went to see Mr. Hurtgen to try to hurry the survey and that, at that time, defendant had not even ordered it; that defendant called her a "couple of times," or more after October 30, 1967, to ask "how the deal was going"; that they talked about the survey "that was held up so long"; in one conversation in November, 1967, defendant was "rather anxious to get it closed," and did not state that "the deal was over"; that she had told defendant that the closing date had "expired." Miss Sullivan never saw any partial deed of release.

On November 17, Mr. Cooperman called defendant and told her that the deal would be closed on November 22; he testified that she made no complaint. However, he called her again on November 18, and she had changed her mind and said that she was not going to close; her stated reason was that she had heard that some "shopping centers" were going up. At that time Cooperman seems to have suggested a possibility of a suit against her.

The closing statement prepared by Miss Schachner of Cooperman's office showed an amount due from plaintiffs of $11,081.05 after a "First Deed of Trust" from the Lemay Bank and Trust Company. This seemingly meant that defendant would receive the $1,000 from that bank. In any event, plaintiffs appeared at Cooperman's office on November 22, and delivered to him a cashier's check for the $11,081.05. Defendant did not appear. No point is made here that plaintiffs did not then tender the full amount due under the contract.

There was considerable testimony concerning a partial deed of release to free the tract from the incumbrance of John Girlic's first deed of trust. Cooperman testified that he asked defendant to get one, and that he later had one in his possession; whether it was executed or not is not definitely shown. He thought that it was returned to Girlic, to whom he had talked by phone. The two women in Cooperman's office who were interested in the matter never saw such a deed and Miss Schachner, who was the "closer," testified that if there had been one a carbon copy should have been in her file and there was none. Girlic denied ever executing one, and in effect testified that he refused to do so. The matter is not vital; it was defendant's duty to provide such a deed, and moreover plaintiffs seem to have tendered the full amount of the purchase price without requiring one. That, however, would still mean that if the deal had been closed

the first deed of trust should have been paid off or partially released with the proceeds. But the matter never got that far.

What happened at the time the contract was executed is definitely material. So far as the record shows only defendant and Miss Sullivan were present. The plaintiffs contend, as shown generally by the testimony: that defendant had twice pointed out the boundaries of the tract to be sold (which proved to be 34.96 acres); that she and Miss Sullivan had marked on a pre-existing plat (Def.Ex.1) the west boundary of the land to be sold, and that defendant had printed her name "E Moll" thereon, and had written "E Mol" in the lower right corner; that defendant showed the surveyor the land to be surveyed, as shown by his completed survey received in evidence; that she designated orally and on a plat the land to be sold, by boundaries and not by acreage; that she "designated" to Miss Sullivan, on the ground, the land to be sold and that the agreement was that defendant would sell a minimum of 25 acres but that she did not say that she would only sell 25 acres; also, that defendant made no complaint of any inability to read. Miss Sullivan did testify that at an earlier time defendant had said that she wanted $500 an acre. Defendant's version of the agreement was: that she had never signed the listing card; that she did not print her name on the previous plat to fix the boundary, or sign her name on it elsewhere; that she said that she wanted to sell 25 acres at $500 an acre and agreed to nothing more; that Miss Sullivan said that the buyers were interested in 25 acres; that she did not see the words "a minimum of 25 acres" in the contract; that Miss Sullivan read the contract to her and that she read "25 acres"; that she trusted Miss Sullivan and Mr. Cooperman; that "they" said there were only 25 acres there, and that her intention was to sell only 25 acres; that she was never contacted prior to October 30, 1967, with reference to a closing; that Miss Sullivan told her later that the "time had elapsed" and that she had the closing costs, but it was "okay" if I didn't care to sign it; that thereupon, Mr. Cooperman got on the phone and said that it was not all right with him; that no one ever asked her about a partial deed of release.

Much of the defense here is based upon evidence that defendant had suffered with a condition of ocular nerve palsy in one eye from July 5, 1967, until about Thanksgiving, that she had been under a doctor's care, and had spent about 10 days in a hospital. She testified: that her pupils "jumped" and that she saw double; that this affected her ability to read, and that she told Miss Sullivan of the condition; that she was not able to read the printing, and that for this reason Miss Sullivan read the contract to her. Her sister corroborated her generally as to the difficulty of vision. Miss Sullivan testified that the defendant apparently read the contract herself.

While it is purely incidental, Mr. Girlic held a second mortgage of $4,450 on the entire tract (93 or 73 acres) recorded after the date of our contract, and also held third and fourth deeds of trust for additional money advanced thereafter to defendant. This appeared from his testimony. He testified also: that Cooperman called him, saying that someone wanted to buy 25 acres and asked for a release deed; that he (Girlic) refused, telling Cooperman "that he wanted his money." There was evidence that the plaintiffs had arranged their financing and that there was no "appraisal problem." These were the two specific causes for delay for which an extension of closing would be granted under the terms of the contract.

At the conclusion of the evidence defendant filed a rather specific motion to dismiss; it appears that the Court took that with the case. Each party requested findings of fact and defendant also requested a statement of the "Grounds for Decision." We have not heretofore reviewed the pleadings; the petition was in conventional form; no attack has been made upon it in the trial court or here.

The answer constituted a denial of all allegations except defendant's ownership of the land.

The trial court found, in substance: that defendant executed the listing contract and thereby appointed Cooperman as her sole and exclusive agent; that she executed the sales contract; that she thereby agreed to convey the acreage described therein as evidenced by a survey; that the certificate of title was not furnished until after October 30, 1967; that the closing was extended by defendant's agent; that plaintiffs did not cause or participate in causing any delay in the closing, but that such was caused by defendant or her agent; that plaintiffs appeared at the date for closing, as extended, and tendered the amount due from them, which was accepted by defendant's agent; that defendant intended to sell, and the plaintiffs intended to buy, the land described in the survey and described in the contract; that defendant pointed out "on the land" the tract being sold; that defendant had an eye condition (described in more detail), but that this did not render her unable to read the contract; that Miss Sullivan did not induce defendant to sign the contract without a full explanation of the "minimum of twenty-five (25) acres" clause; that there was no delay in closing because of financing or appraisal; that the transaction was not closed on time because the certificate of title had not been issued and because a partial deed of release had not been obtained; that plaintiffs did not appear for closing on October 30, 1967; and that Cooperman did not notify the plaintiffs of a delay, but did notify the defendant. As "Grounds for Decision," the Court stated: that defendant signed the contract and the amendment referred to; that defendant waived compliance with the time set for the closing of the deal and that time was not of the essence; that the contract could not be closed without the survey; that a certificate of title based upon a metes and bounds description was necessary; that the surveyor had difficulty in getting defendant to meet him and point out the land to be surveyed; that plaintiffs

were not derelict in their performance in any particular; that Cooperman notified defendant on November 17, 1967, of the anticipated closing on November 22; that plaintiffs made payment to Cooperman on the latter date of the amount due, and that Cooperman, on and after October 30, 1967, requested defendant to execute a warranty deed.

Defendant makes the points: (1) that the contract did not reflect a meeting of the minds; (2) that the Court should have found that the execution of the contract was a result of "sharp practices" by the Cooperman Realty Company; and (3) that there was no evidence that plaintiffs had made a tender of performance on October 30, 1967, or that Cooperman requested a warranty deed from defendant. The plaintiffs counter by asserting that: (1) the contract and "amendments," together with the initialling of the plat by the parties and the survey, all resulted in a description sufficiently definite for a determination of the tract to be conveyed; (2) that all the essential elements of the contract necessary for specific performance were present; (3) that time was not made of the essence, that performance within a reasonable time was sufficient, and that such was tendered; and (4) that Cooperman was not the agent of plaintiffs and they could not be held responsible for any "sharp practices."

The method of review in equity cases has been stated so frequently that it need only be referred to briefly. The appellate court should review the record and enter such judgment as the trial court should have entered, but in so doing, it shall pay deference "to the opportunity of the trial court to judge of the credibility of the witnesses." Community Land Corp. v. Stuenkel et al., Mo., 436 S.W.2d 11. And we are admonished by our Rule 73.01, V. A.M.R. that the judgment shall not be set aside "unless clearly erroneous." A party seeking specific performance must show performance on his part, or an offer of performance, of every essential obligation

incumbent upon him. Drake v. Hicks, Mo., 249 S.W.2d 358. And, in order to justify specific performance, a contract must not be indefinite, uncertain or incomplete, for the Court will not make a contract for the parties. Community Land Corp. v. Stuenkel, supra; Bellows v. Porter (CA 8), 201 F.2d 429. But parol evidence may be used to show "the position of the parties and of the subject matter and other surrounding circumstances." id. And, generally, a written contract is binding as against a claimed contemporaneous oral agreement which would modify or vary it. Bellows v. Porter, supra. The Court has much discretion in considering and deciding a specific performance case. Cossairt v. Reich, Mo., 370 S.W.2d 291.

■ The really vital question here is whether or not the defendant agreed to sell the tract of land described in the contract and its "amendment" or whether she was imposed upon by "sharp practices" and made no such agreement. Defendant has not pleaded fraud. Her claim is that she only intended to sell 25 acres. She certainly knew (or was charged with knowledge) that there was a description in the contract of the whole tract north of the road, and there is *no explanation of what* 25 acres she was, on her theory, agreeing to sell out of that tract, if it proved to be more than 25 acres, as it did. She could not sell an undescribed 25 acres out of a larger tract. There is no claim that there was any discussion of what was to be done if the survey showed more than 25 acres. Defendant admitted that she told Mr. Hurtgen to survey "all except this twenty-foot strip up here in the northwest corner * * *." The trial court found that Cooperman and his employees were defendant's agents and that plaintiffs could not be prejudiced by their actions. But it also found that Miss Sullivan, who negotiated the contract, *did not* induce defendant to sign the contract without a full explanation that the contract did provide for a "minimum" of 25 acres. This means essentially that there was no misrepresentation or sharp practice.

This case is typically one where we should defer to the findings of the trial court on the credibility of the oral testimony. We do so here. We agree with the Court that the contents of this contract were not misrepresented, that there were no sharp practices, and that defendant duly executed and intended to execute the contract to sell the whole tract, with the description subject to survey. The defendant herself held a license as a real estate "saleslady." The description in the contract, though not as precise as it might be, is recognized by the parties as describing defendant's whole tract north of the road except the west 20 feet. And that is certain which can be made certain. Ray v. Wooster et al., Mo., 270 S.W.2d 743. The survey confirmed the description. The trial court further found that defendant's impairment of vision was not such as to prevent her from reading the contract; we defer to that finding. We hold that defendant was bound by the contract as executed. We are strongly confirmed in this holding by the evidence that defendant certainly pointed out on the ground the boundaries of the tract to Miss Sullivan and to the surveyor, and perhaps to Mr. Cooperman. The contract contained the essential elements of: parties, subject matter, the promises on both sides, the price, and the consideration. Wilkinson v. Vaughn, Mo., 419 S.W.2d 1. The case of Ragan v. Schreffler, Mo., 306 S.W.2d 494, cited as holding that a contract will not be specifically enforced if there was no meeting of the minds, is actually more favorable to plaintiffs than to the defendant, when carefully considered. We cannot take the space to compare the facts. It holds that generally, absent fraud, one cannot avoid a contract on the ground that he did not understand its terms, or thought that it was "different." In Cossairt v. Reich et al., Mo., 370 S.W.2d 291, there appears to have been clear evidence of

misrepresentations by agents who, without disclosing that fact, were also acting as agents for the other party. There specific performance was denied.

We hold that there was a meeting of the minds of the parties on the contract as written, and that there were no sharp practices to prevent specific performance. In the findings here noted, we are expressing them as our own, as well as adopting those of the trial court. The failure of the plaintiffs to testify is not material. The case cited by defendant, Ewing v. McIntosh, 359 Mo. 625, 222 S.W.2d 738, refers to the failure of a party to testify, knowing material facts, *or* to call witnesses, thus creating a presumption that the testimony would be unfavorable. Here plaintiffs called witnesses who knew materially more about the issues than they did personally. The principle is inapplicable.

The remaining point concerns largely the time when plaintiffs tendered performance. Defendant says that the contract should not be enforced because plaintiffs did not tender performance on October 30, 1967, the date fixed in the contract for the closing. There is no contention that plaintiffs did not tender full performance on November 22, the date to which Cooperman extended the closing. The trial court found, as stated, that defendant executed the listing card (Plaintiffs' Ex. A) and thereby appointed Cooperman as her sole and exclusive agent. The testimony of Cooperman and of defendant was in direct conflict. Defendant's name appears at two places on the Exhibit, and at each there is an "X" immediately before her name (apparently in red ink, which Cooperman used on the rest of the card). There is considerable argument by defendant concerning the fact that defendant's name, in each place, appeared in printing and in red pencil whereas she signed the later contract (Ex. D) in her handwriting; other differences are also suggested. All of this went merely to the effect or weight of the evidence on the trial court (and here). The trial court heard the witnesses and found that defendant executed the listing contract. Deferring to that action, we make that finding here. The language on the card constituted an express appointment of Cooperman as defendant's "sole and exclusive" agent to sell the property and provided for a commission. Where such a contract has been entered into there can be no doubt that the real estate operator becomes the *agent* of the seller. See, generally: Hilmer v. Decher, Mo.App., 183 S.W.2d 321; Smith v. Piper et al., Mo.App., 423 S.W.2d 22; Miller v. Gotsman, Mo.App., 253 S.W.2d 407; Cornet & Zeibig, Inc. v. 430 Withers Realty Co., (Banc) Mo., 415 S.W.2d 751. It follows that Cooperman was defendant's agent and that she was responsible for his acts within the general scope of the employment. Defendant's counsel does not deny that Cooperman would be (and was) defendant's agent *if* she executed the listing contract. There is no evidence whatever to indicate that he ever became an agent for the plaintiffs.

There is substantial evidence that the defendant herself caused a delay beyond October 30, principally by her failure to contact the surveyor and employ him promptly, and also by her delay in going out on the ground with him and showing him the boundaries. This testimony came from Miss Sullivan and Mr. Hurtgen. It is most probable that defendant's own acts or failure to act caused a delay beyond October 30. Plaintiffs were entitled to a certificate of title, and such a certificate could not be issued until after the survey. Miss Schachner, the "closer" of Cooperman, testified that when she got the survey she ordered the title. The original closing date had clearly passed when the certificate was received. We find, as did the trial court: that the delay in the closing was caused by defendant or by Cooperman and his employees; and that, thereby, defendant waived a prompt compliance and

tender by plaintiffs. This being true, it is immaterial whether plaintiffs were actually notified, before October 30, that the deal could not be closed then. An appearance by them on that date would have been a useless thing when defendant could not produce a good title and a description. Arnold v. Smith et al., Mo., 436 S.W.2d 719. See also Wilkinson v. Vaughn, Mo., 419 S.W.2d 1. The cited case of Hellrung v. Hoechst, Mo., 384 S.W.2d 561, is not persuasive. The asserted failure of Cooperman to request the execution of a warranty deed before October 30 is immaterial under this state of facts.

There was evidence that defendant was to procure from Mr. Girlic a partial deed of release on the existing first mortgage. We find that none was ever executed (if even prepared). Certainly this could not prejudice the plaintiffs. Although the contract listed only two specific grounds for an extension of the closing, any delay fairly attributable to the defendant could not legally put the plaintiffs in default. Such was the situation here.

The trial court ordered defendant to convey upon receipt of the sum of $11,081.-05. Upon remand the trial court should determine the status of the item "First Deed of Trust Lemay Bank & Trust Company" on the closing statement, showing a credit to plaintiffs of $1,000. Defendant is entitled to her full price of $12,500, less any commission, any closing costs, and one-half of the cost of the survey. The cashier's check tendered by plaintiffs was for $11,081.05. In other words, the closing statement allows plaintiffs a credit of the item of $1,000 when its disposition is not shown; defendant is entitled to the full $12,500, less the normal charges. Defendant has not raised this point in her brief or complained of the *amount* tendered by plaintiffs. We might assume that the $1,-000 was also to be paid to defendant, but we prefer that the trial court should ascertain that.

Except for the foregoing, which concerns only the amount to be paid by plaintiffs, the judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.