**Teri McBEE, Respondent,**

v.

**GUSTAAF VANDECNOCKE REVOCABLE TRUST,**
**Appellant.**

**No. 80887.**

Supreme Court of Missouri,
En Banc.

Feb. 23, 1999.

Daniel Ray Dunham, Columbia, Larry E. Tate, Boonville, Elizabeth E. Parrigin, Columbia, for Appellant.

Michael W. Manners, Independence, Kirk Rahm, Warrensburg, for Respondent.

STEPHEN N. LIMBAUGH, Jr., Judge.

Defendant, Gustaaf Vandecnocke Revocable Trust, appeals the judgment of the Circuit Court of Saline County granting specific performance of a real estate sales contract in favor of plaintiff Teri McBee. After opinion by the Court of Appeals, Western District, this Court accepted transfer. Mo. Const. art. V, sec. 10. The judgment of the trial court is affirmed, as modified.

Gustaaf Vandecnocke established the Gustaaf Vandecnocke Revocable Trust on February 14, 1995, and named Robert Vandecnocke as trustee. Following Gustaaf's death on March 24, 1995, the trustee began to liquidate trust assets. Thereafter, the trustee and Teri McBee (buyer) entered into a contract for the sale of trust real estate located in Howard County, consisting of a farmhouse and outbuildings situated on 220 acres of land. Buyer paid ten percent of the $132,000 purchase price when the contract was signed and owed a balance of $118,800 upon closing. The contract contained a clause that placed the risk of loss until closing on the trustee. The contract did not, however, require that insurance be maintained on the property nor did it state how any insurance proceeds were to be distributed in the event the property was destroyed.

On the night before closing, the farmhouse was destroyed by a fire of unknown origin. The next day, buyer and the attorney for the trust met to close the sale, as scheduled, but the closing was aborted because of confusion as to how to proceed in light of the destruction of the farmhouse. A few days later, the parties learned that the house had been insured for $65,000 against damage or destruction by fire, and this amount was eventually paid to the trust. Nonetheless, the parties were unable to agree on the distribution of the insurance proceeds.

As a result of the parties' impasse, buyer filed suit in the Howard County Circuit

Court against the Gustaaf Vandecnocke Revocable Trust, seeking, *inter alia,* specific performance of the contract and an abatement of the purchase price for the entire amount of the insurance proceeds paid to the trust. After trial, which was held in Saline County on change of venue, the trial court entered judgment in favor of the buyer. The buyer was granted specific performance and ordered to pay $36,615, the balance of the purchase price owed to the trust after deducting the $65,000 insurance proceeds, the down payment and certain other amounts that were not contested.

## I.

The primary focus of the appeal and the issue on which this Court granted transfer is whether the trial court had jurisdiction over the case in view of the fact that the sole defendant identified in the caption was the "Gustaaf Vandecnocke Revocable Trust." The trustee claims that he was a necessary and indispensable party to the proceeding, and because he was not named as a party, the petition failed to state a cause of action. He adds that the entry of judgment against the trust, as opposed to the trustee, was void.

■ The trustee is correct that he is the legal owner of the trust property, *Horn v. Muckerman,* 307 S.W.2d 482, 485 (Mo.1957), and is a proper party against whom the suit may be filed and judgment affecting title to trust property may be entered. Sec. 456.480.3, RSMo 1994. The trustee is also correct that a properly crafted caption to the petition should have denominated the trustee as a party in his official capacity because Rule 55.02 requires that the title of a petition in a civil action—the caption—must "include the name of all parties."

■ Nevertheless, whether the trustee is a necessary and indispensable party whose absence from the case defeats jurisdiction is an issue that need not be decided because the trustee was, in fact, a party to the case. The buyer's failure to name the trustee in the caption did not divest the trial court of jurisdiction. The parties to a cause of action are determined by reference to the body of the petition, not the caption, *Jackson v. Director of Revenue, State of Mo.,* 893 S.W.2d 831, 833 (Mo. banc 1995); *Watson v. Watson,* 562 S.W.2d 329, 332 (Mo. banc 1978), and the caption, itself, is not technically a part of the petition, proper. *Barnett v. Schumacher,* 453 S.W.2d 934, 937 (Mo.1970); *Jenish v. Weaver,* 676 S.W.2d 526, 526 (Mo.App.1984).

In *Jackson,* plaintiff filed a petition for review styled, "In re: The Matter of Robert Lee Jackson" requesting reinstatement of his driver's license. This Court held that the failure to name the Director of Revenue as a party defendant did not deprive the court of subject matter jurisdiction, so long as plaintiff "name[ed] . . . as an adverse party, [sought] relief against, or in any other way treat[ed] as a party to the lawsuit the Director of Revenue or Department of Revenue in *the body of the petition . . . ." Jackson v. Director of Revenue, State of Mo.,* 893 S.W.2d at 833 (emphasis added). Similarly, in *Watson v. Watson,* a will contest case, plaintiff's failure to name an individual legatee in the caption of the case did not deprive the court of subject matter jurisdiction over that person because he had been named as an individual legatee in the body of the petition. *Watson v. Watson,* 562 S.W.2d at 331–32. These cases control.

■ The body of buyer's petition, when taken as a whole, leaves no doubt that the trustee was identified as the real party in interest. In pertinent part, the petition states, "[d]efendant Gustaaf Vandecnocke Revocable Trust is a lawful Missouri trust and the trustee is Robert Vandecnocke." The petition further alleges that "Robert Vandecnocke, as trustee of said trust, holds legal title to the following described real estate. . . ." In addition, the petition incorporated by reference the real estate sales contract that expressly identified the parties thereto as Teri McBee and Robert Vandecnocke as Trustee of the Gustaaf Vandecnocke Revocable Trust. Consequently, the buyer's petition, which, like all petitions, is to be "given its most liberal construction" and accorded "all reasonable inferences deducible from the facts stated," *Adkisson v. Director of Revenue,* 891 S.W.2d 131, 132 (Mo. banc 1995), was sufficient to state a cause of action.

It also bears mention that trustee was in no way prejudiced by the defect in the caption. He was personally served with the petition and summons and defended the case on the merits throughout the proceedings and even brought a counterclaim in his official capacity as trustee. Not surprisingly, the trial record also shows that both parties referred to the trust and the trustee synonymously and interchangeably.

Having determined that the trial court properly had subject matter and personal jurisdiction over the trustee, the corresponding judgment should have been entered against the trustee rather than the trust. Rule 84.14 provides, *inter alia,* that "[t]he appellate court shall ... reverse or affirm the judgment or order of the trial court, or give such judgment as the court ought to give." Pursuant to this rule, the judgment is hereby modified so that it is entered against the trustee.

## II.

■ The trustee next argues that the trial court should not have ordered specific performance because the buyer abandoned the contract and failed to prove that she was able to tender performance of her contractual duties. In that connection, the trial court ruled that the buyer fully complied with all conditions precedent to the contract and stood ready and willing to tender performance. This Court's review of that ruling is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), which states that in "suits of an equitable nature ... the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." In addition, the trial court is afforded much discretion in deciding whether to award the equitable remedy of specific performance. *Biggs v. Moll,* 463 S.W.2d 881, 886–87 (Mo.1971).

■ The trustee contends that the buyer's conduct—particularly her failure to set a final closing date or to reply to several of the trust attorney's correspondences—demonstrated her intent to abandon the contract.

An abandonment of contract, as this Court has held, "must be made to appear affirmatively by the party asserting it, and ... proof of abandonment must be made by clear, unequivocal and decisive evidence." *Miran Inv. Co. v. Medical West Bldg. Corp.,* 414 S.W.2d 297, 303 (Mo.1967). Moreover, an actual intent to abandon contract rights must also be proven. *Id.*

■ From this Court's review of the record, the trial court could find that the buyer's conduct, taken in its entirety, did not manifest her intent to abandon the contract. To the contrary, the evidence suggests that the buyer repeatedly attempted to proceed to closing and reiterated her commitment to the contract throughout the progression of correspondence between her and the trustee. Indeed, at trial, the lawyer for the trust admitted that buyer had sent him a fax, which was one of the last communications between the parties before trial, indicating that "she [the buyer] still wanted to go through with the deal." Finally, any perceived hesitancy on the part of the buyer appears to be due solely to the fact that the parties were unable to agree on the disposition of the insurance proceeds. Under these circumstances, the trial court did not abuse its discretion when it ruled that the buyer did not abandon the contract.

The trial court also found no merit in the trustee's contention that the buyer failed to prove she was able to tender the balance of the purchase price. A bank loan officer who dealt with the buyer testified at trial that he believed that buyer was capable of purchasing the property through either a bank loan or other secured loans. Further, buyer testified at trial that she stood ready and willing to tender the balance of the purchase price for the contract, even without a bank loan. Giving due regard to the opportunity of the trial court to have judged the credibility of these witnesses, this part of the trial court's determination was also supported by substantial evidence.

## III.

■ The trustee's final argument is that the trial court erroneously credited the buyer

with the entire amount of the insurance proceeds collected by the trust following the destruction of the farmhouse. This Court holds, however, that there was no error, as the trial court properly applied the rule of *Skelly Oil Co. v. Ashmore*, 365 S.W.2d 582 (Mo. banc 1963), in reaching its decision.

In *Skelly Oil*, the plaintiff/buyer contracted for the purchase of a parcel of real estate that contained a grocery store and smokehouse. Prior to closing, the grocery store was destroyed by fire. Although the defendant/seller maintained a fire insurance policy on the building, the contract had no provision for risk of loss prior to closing or how the insurance proceeds were to be allocated in the event of a loss.

This Court, following the so-called "Massachusetts rule," held that the risk of loss was placed on the seller during the executory period of the contract. *Id.* at 589. That did not end the matter, however, because even though seller bore the risk of loss, the contract would no longer be binding on either party if it were shown that the value of the buildings before their destruction constituted "a large part" of the total value of the whole estate (both land and buildings), and "an important part of the subject matter of the contract." *Id.* That said, the Court then determined that the "buildings did not constitute so material a part of the estate to be conveyed as to result in an annulling of the contract." *Id.* Accordingly, the buyer was granted specific performance of the contract and an abatement in the purchase price equal to the proceeds received by the seller under the fire insurance policy.

■ The trustee argues that *Skelly Oil* is not on point because it was decided in the absence of a contract provision allocating the risk of loss prior to closing. This perceived distinction lacks merit. In *Skelly Oil*, the Court placed the risk of loss upon the seller when the parties failed to allocate the risk of loss on their own, but in this case, the parties, themselves, placed the risk of loss on the seller by express provision in their contract. The fact that the two cases involved different means of allocating the risk of loss upon the seller is immaterial.

Next, the trustee contends that the trust should be entitled to the insurance proceeds because 1) insurance coverage was not required under the contract but was voluntarily maintained solely for the benefit of the trust, and 2) the trust assumed the risk of loss and the insurance proceeds compensated for that loss. These arguments also lack merit. By allocating the proceeds of the insurance policy to the trust, the risk of loss would effectively pass to the buyer in contravention of the parties express purpose of placing the loss on the seller. The buyer would pay the full purchase price for the property, but without the value of the buildings or offsetting compensation. The seller, on the other hand, would gain the windfall of taking the full value of the contract price plus the value of the buildings he had already agreed to sell. This Court rejected such a result in *Skelly Oil*.

Finally, the trustee argues that the farmhouse in this case, unlike the grocery store and smokehouse in *Skelly Oil*, was the most important part of the contract when compared to the total value of the property sold. As the trustee then explains, because the most important part of the contract was destroyed by fire, the contract was impossible to perform and should be annulled.

However, the circumstances of *Skelly Oil* cannot fairly be distinguished. In that case, the contract involved the purchase of a grocery store and smokehouse situated on a corner lot for a total price of $20,000. The grocery store, the building that was destroyed by fire, was valued in the insurance adjustment at $16,716 from which $4,179 was deducted for depreciation, and the insurance proceeds paid on the destroyed grocery store were in the amount of $10,000. On the other hand, the buyer in this case contracted to purchase 220 acres of land, a one-and-a-half story farmhouse, and several outbuildings for $132,000. The value of the farmhouse, itself, was hotly contested, and although it had been appraised for $36,000, and was insured for $65,000, the buyer opined that it was worth approximately $80,000 to her. Even at the highest appraisal of $80,000, the relation between the value of the farmhouse to the total value of the estate was comparable

to the relation between the value of the buildings in *Skelly Oil* to the total value of that estate. As in *Skelly Oil*, the farmhouse in this case did not constitute so large a part of the total value of the estate that the contract should be rendered impossible to perform. The trial court ruling to that effect was consistent with precedent and was amply supported by the evidence.

### IV.

For the foregoing reasons, the judgment of the trial court is affirmed as modified.

All concur.