[1] The plaintiffs, who are husband and wife, charge the defendant with malicious trespass and seek damages against her. The parties owned adjoining lots of land and the plaintiffs contend that the defendant built a high board fence wholly upon their property. The trial resulted in a verdict and judgment against the defendant in the sum of $100 actual and $1,000 punitive damages from which she has appealed.
[2] Carl and Geneva Welker owned some property in the city of Cape Girardeau known as 621 Themis Street and it was bounded on the west by the property belonging to Maud Pankey. Both lots had houses upon them and at the time the Welkers acquired their place an old wire fence extended from the corner of the house toward the rear or southwest corner of the lot. Approximately two feet east of this wire fence were five small fruit trees that were about two years old and not bearing.
[3] Mrs. Pankey had complained about some tenants in the Welker house on occasions and had had some words with Welker when he requested her to move an old shed that was near the property line. After this Mrs. Pankey built a board fence six feet high which plaintiffs state is on their property.
[4] The petition charges that the trespass took place on property described in metes and bounds following a description contained in the deed by which the Welkers hold title. Most of the testimony introduced had to do with the location of the boundary line and the location of the fence with respect to the line.
[5] Plaintiff Welker testified that the old wire fence marked the joining boundary of the lots and that the board fence was built from 8 to 25 inches east of the old wire fence and upon the lot owned by him and his wife. He stated that the greatest encroachment was to the rear where Mrs. Pankey cut down the fruit trees mentioned and that the portion of the fence near the house was about 6 inches from one of the windows and obscured the lower 12 inches of it.
[6] Mrs. Welker testified that the board fence was built by Frank Randol and that the defendant directed him where to put it. This plaintiff also stated that it was constructed through and cut off about a foot of a lettuce bed that she had planted. She further described the fence as being 6 feet in height and of solid construction where it paralleled the side of the house.
[7] A former owner of plaintiffs' property, testifying on behalf of the plaintiffs, stated *Page 507 
that the old wire fence was on the boundary line, and a former tenant of Mrs. Pankey testified that the new fence was east of the old one.
[8] The plaintiffs then called as a witness Frank Randol, who built the fence, and he stated that it was built along a line indicated by stakes set out by a surveyor, but that it was moved about 2 1/2 inches west after its first construction and that as far as he knew it was on the defendant's property.
[9] Plaintiffs also called the surveyor and he testified that he had made a survey at the request of Mrs. Pankey to establish the boundary line and that he had set the stakes at the north and south corners. He stated that part of the plaintiffs' house was 6 inches over the boundary line and to that extent on the defendant's property. After this testimony by the surveyor plaintiff Carl Welker was recalled and testified that after the stakes had been set by the surveyor he saw Mrs. Pankey pull up the south stake and move it about 24 inches to the east.
[10] Upon this testimony the plaintiffs rested their case and after defendant had moved unsuccessfully for a directed verdict Randol was recalled by the defendant and testified that he started to build the fence while the surveyor was still there, along a line stretched between the stakes set out by the surveyor, and that he never saw the defendant move any stake. His testimony was followed by the defendant recalling the surveyor, who stated that during the noon recess of the trial he had made measurements from a starting point on the east side of an alley in the block to the fence and that the fence was approximately where the line had been originally surveyed and lacked about an inch and a half of being on the lot owned by the plaintiffs. On cross-examination, he stated, as he recalled it, the fence had been on the Welker property at first and was moved back on the Pankey property to conform to the survey.
[11] It is contended that the petition does not state facts sufficient to constitute a cause of action because it fails to allege the character and amount of the damages. The petition states that the defendant trespassed upon the plaintiffs' land and did then "cut, damage and destroy trees and shrubbery on the premises". It contains an averment that the plaintiffs have been damaged in the sum of one thousand dollars. This point is raised for the first time on appeal, and since the petition cannot be amended as it could have been had the same point been raised in the trial court, we must follow the rule that pleadings are liberally construed on appeal to prevent entrapment. This is always true unless they wholly fail to state a cause of action. Rogers v. Poteet, 355 Mo. 986, 199 S.W.2d 378. Here the failure to allege the reasonable value of the trees etc. or of the property before and after the alleged trespass does not make the petition defective for it states a cause of action since the plaintiffs were entitled to at least nominal damages if the trespass was proven. Hyre v. Becker, Mo.App., 18 S.W.2d 137. In fact our Supreme Court held in Blankenship v. Kansas Explorations, 325 Mo. 998, 30 S.W.2d 471, that the measure of damages need not be set out in the petition in a trespass case as that is a matter to be covered by instructions given by the court to the jury. It follows that the objection to the petition is without merit.
[12] Defendant maintains that there was no proof that the land upon which the fence was built was the same land described in plaintiffs' petition and that because of this a verdict should have been directed for the defendant. On this score the evidence was certainly confusing as to the entire extent of the trespass claimed, but it cannot be held that there was no evidence of trespass because of Welker's testimony that the defendant moved the south stake twenty-four inches to the east after it had been set by the surveyor. If the fence was built along the line thus established and trees were cut for the purpose then there must have been some trespass. Welker's evidence is sufficient to have made a submissible case as to that portion of the ground where the trees were cut and his testimony was strengthened by the statement of the surveyor to the effect that the fence was moved back towards the *Page 508 
Pankey lot after it was first built. In view of this, the court did not err in refusing to direct a verdict for the defendant.
[13] The remaining assignments of error have to do with an instruction given, designated instruction No. 2. It is as follows:
[14] "The Court instructs the jury that if you find the issues in favor of Plaintiffs in accordance with other instructions herein, you will assess Plaintiffs' damages at such sum as you find and believe from the evidence will reasonably compensate Plaintiffs for the invasion of their premises, for the annoyance and offense, if any, which you may find Plaintiffs suffered by construction and maintenance of the board fence mentioned in the evidence, for the loss of fruit and other trees and shrubbery, if any, which you may find from the evidence Defendant destroyed and caused to be destroyed upon Plaintiffs' premises as such premises are defined in other instructions herein, not exceeding in any event, the sum of One Thousand Dollars in actual damages.
[15] "You are further instructed that if you find and believe from the evidence that the acts of Defendant were done maliciously, that is without justification or excuse, and wilfully, that is intentionally, and with the purpose of annoying and harrassing Plaintiffs and the occupants of their dwelling house, you may award Plaintiffs additional punitive damages in any amount not exceeding Five Thousand Dollars, but in case you do award such punitive damages, the same must be separately stated in your verdict, and you cannot award punitive damages without awarding some sum as actual damages."
[16] This instruction purports to be a measure of damage instruction, but it affords the jury no rule by which the damages can be measured. In a case of trespass upon land damages are measured by the depreciation in the value of the land where such value has depreciated by reason of the trespass; but, where the property can be restored and the cost of restoring is less than the depreciation caused, then the lower amount is the measure of damages. There should, of course, be added to the cost of restoring the land such actual damages as the owner may have suffered by the loss of use where that is shown by the evidence. Young v. Home Telephone Co., Mo.App., 201 S.W. 635; Sperry v. Hurd, 267 Mo. 628, 185 S.W. 170; Tegeler et ux. v. Kansas City, 95 Mo.App. 162, 68 S.W. 953; Reed v. Peck et al., 163 Mo. 333, 63 S.W. 734; Smith v. Kansas City, 128 Mo. 23, 30 S.W. 314.
[17] The instruction fails to properly inform the jury of any rule by which the damages are to be measured. More serious, however, is the fact that there is no evidence to sustain the verdict for compensatory damages as no mention is made, of the value of the land before and after the trespass or of the value of the trees cut down, in any of the testimony. There is nothing in evidence to support a verdict for more than nominal damages and the jury should have been so instructed. Ross v. New Home Sewing Machine Co., 24 Mo.App. 353.
[18] As to the portion of the instruction relating to punitive damages, it refers to the acts of defendant and most of the testimony and the previous instruction to which it refers have to do with the building of the fence near the house. The acts for which the defendant can be held accountable must be acts relating to a trespass, and there was no proof that the fence by the house was upon the plaintiffs' land. The evidence of the plaintiffs' own witness, the surveyor, was to the contrary. He stated in fact that the plaintiffs' house extended six inches over on the defendant's property.
[19] If the defendant wilfully moved the rear surveyor's stake and cut the fruit trees she is liable for both actual and punitive damages, but the instruction must be confined to those acts of trespass shown by the evidence. This was not done.
[20] It is the recommendation of the Commissioner that the judgment be reversed and the cause remanded.