Lewis V. BEATY, James S. Beaty and Betty J. Beaty (Plaintiffs), Respondents,

v.

N. W. ELECTRIC POWER COOPERATIVE, Inc., a Corporation (Defendant), Appellant.

No. 22412.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1956.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, and Vance Julian, Clinton, for appellant.

Denton E. Houtchens, Clinton, for respondents.

CAVE, Judge.

This is an appeal from a judgment in favor of the plaintiffs and against the defendant for $3,000. For clarity, respondents are hereafter referred to as plaintiffs, and appellant as defendant.

The cause of action arose out of alleged damages resulting from defendant's construction of a power line across plaintiffs' farm. Plaintiffs were the owners of a farm of approximately 1,500 acres in Henry County, and executed an easement in favor of defendant for the purpose of entering upon said farm and building, operating and maintaining an electric transmission line. The easement contained the following provision: "Grantor reserves the right to pasture and farm said easement, and any damage caused to the land and/or growing crops thereon or livestock thereon by the reason of the construction, maintenance or operation of said electric line or system, shall be compensated for by

·Grantee." The right-of-way acquired by the easement was 100 feet in width and extended approximately 2¾ miles across. plaintiffs' farm and included approximately 30 acres. The defendant erected the transmission line and in doing so caused certain alleged damages for which it is claimed the defendant is liable under the above provision of the easement. At the beginning of the trial, it was stipulated that under such easement provision, the defendant would be required "to pay any damages, whether negligently caused or otherwise, in the course of the construction, operation and maintenance of the line, to livestock, land or growing crops".

Plaintiffs' land was primarily a stock farm, well seeded and sodded in bluegrass. They pastured many head of cattle of their own, and also rented pasturage to others. They also harvested substantial bluegrass seed and sold it on the market. Generally the evidence relates to the following elements of damage: (a) the destruction by fire, caused by the defendant, to 25 acres of bluegrass sod and certain fences and trees outside of the easement right-of-way; (b) the damaging of about 25 acres of bluegrass sod within the right-of-way due to the use of heavy machinery during wet weather; and (c) damage to the farm as a whole resulting from such heavy machinery causing deep "ruts" and erosion therefrom.

To better understand the relevancy and sufficiency of the evidence relating to the various elements of damage, we think it advisable to state the contentions made by the defendant on appeal. It contends that the court erred in refusing to give its Instructions D, E and F, and in giving plaintiffs' Instruction 5.

Instruction F declared that there had been a failure of proof of "loss of bluegrass seed crops and in respect to such element of claimed damage you may not allow anything more than a nominal amount". Instruction D withdrew from consideration evidence relating to the depreciated market value of plaintiffs' farm as a whole. Instruction E declared that there had been a failure of proof in respect to the amount of damages suffered by plaintiffs as a result of ruts being created upon the land as distinguished from the grass crop thereon, and that the jury could allow only nominal damages for such item. Plaintiffs' Instruction 5 submitted the issue of damages and will be discussed later.

Plaintiffs produced a number of witnesses. The effect of their testimony may be summarized as follows: Plaintiffs owned a farm of 1,500 acres, most of which had an excellent stand or sod of bluegrass which was used for pasturing livestock and also "stripping" for seed; that defendant's right-of-way was 100 feet wide and extended about 2¾ miles across plaintiffs' land; that in constructing the transmission line, defendant used heavy machinery such as trucks, caterpillars, tractors, halftracks and bulldozers; that the construction work was done in early spring when the ground was wet and soft; that such machinery caused deep ruts and upheaval of soil within the right-of-way and thereby destroyed 25 acres of bluegrass; that the "ruts" caused some erosion of the soil; that while defendant was constructing the transmission line, it caused a fire which destroyed 25 acres of bluegrass outside of its right-of-way; also destroyed some fencing, and damaged some trees.

With reference to the amount of damage resulting from these various acts, plaintiffs' evidence is that the fencing was damaged from $175 to $200; the value for pasturage purposes of the 25 acres destroyed by fire was $250 for the years of 1953 and 1954, or a total of $500; that the reasonable cost of reseeding the 25 acres burned would be $500; that the reasonable cost of plowing and reseeding the 25 acres destroyed within the right-of-way would be $500; and that the trees were damaged $100 by the fire. Defendant's evidence minimizes these elements of damage, but we are not concerned with the weight of the evidence.

We now consider the evidence relative to an element of damage which defendant's Instruction F seeks to eliminate from consideration by the jury. Such evidence concerns the value of the seed crop which was destroyed for the years of 1953–54–55. Plaintiffs' evidence is that the bluegrass on the land immediately adjacent to that which was destroyed by the defendant was of the same kind and growth as that which was destroyed; and that such adjacent bluegrass, for each of such years, produced 7 or 8 bushels of seed per acre and sold for approximately $4 per bushel, after being harvested, processed and delivered to market. On this basis, plaintiffs estimated their loss of the seed crop at $800 for each year of 1953 and 1954, and, because of the reduced market value in 1955, the damage for that year was estimated at $200. It was admitted that these amounts represented "gross figures". There is also evidence, by witness Gaines, that the harvesting and curing of bluegrass seed "is an expensive operation and involves a lot of hand labor", as well as use of machinery.

Defendant contends that its Instruction F should have been given, withdrawing from the jury's consideration the element of damage to the seed crop, because there was no proper evidence of such value. This contention is on the theory that plaintiffs' evidence relates only to the amount of seed which would likely have been produced and what it would have sold for on the market, *without taking into consideration the cost of producing, harvesting and marketing the seed*. This contention must be sustained.

 The measure of damages to a growing crop is well stated in Happy v. Kenton, 362 Mo. 1156, 1157, 247 S.W.2d 698, 704, where it is said: "* * * we think there can be no question but that the measure of damage for injury to or destruction of a growing annual crop is, in the case of total destruction: the value of the crop at the time and place of destruction; and as to injury or partial destruc-

tion: the difference between the value of the crop immediately before and immediately after the injury. * * * However, to determine the value of a growing annual crop at the time and place of destruction or its value immediately before and immediately after any injury, we have approved a method to ascertain the amount of damages. This, by a consideration of evidence showing the maturity value of the probable crop but for destruction or injury, and by a deduction therefrom of the value of the labor and the expense which, subsequent to its injury or destruction and but for it, would have been required to mature, care for, and market the crop." See also: Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289, 294; and Welker v. Pankey, Mo.App., 225 S.W.2d 505, 508. This is the correct rule, and plaintiffs' evidence failed to take into consideration the cost of harvesting and marketing the seed crop.

 Plaintiffs make two answers to this contention. They state: (a) "There was no evidence on the cost of maturing, caring for, processing and marketing the crop as such is not the case of bluegrass seeding in this community and the same is common knowledge to the attorneys, court and jury"; and (b) that the plaintiffs did most of the work themselves. Instead of holding that it is common knowledge that it does not cost anything to mature, care for, process and market bluegrass seed, we think the contrary would be true. In addition, all the evidence is that the seed must be "stripped" with machinery, and cured, which "involves a lot of hand labor", and marketed. And the fact that the plaintiffs did most of the work would not relieve them of the burden of proving their damage in accordance with the above quoted rule for determining the damage to destroyed crops. Morrill v. Alexander, Mo.App., 215 S.W. 764. Plaintiffs cite no authority holding to the contrary. There being no proper evidence of the damage resulting from the destruction of the seed crop, plaintiffs were entitled to no more than nominal damages therefor, and the jury should have been so

instructed as tendered by defendant's Instruction F. Welker v. Pankey, supra, and Morrill v. Alexander, supra.

Plaintiffs also contend that, assuming that they should have offered evidence as to the cost of harvesting, processing and marketing the seed but failed to do so, nevertheless, the defendant would have been entitled to only a limiting or qualifying instruction as to that element of damage. That is the effect of defendant's Instruction F. There was no evidence of the cost of harvesting and marketing the seed and an instruction requiring the jury to take such costs into consideration would have been unsupported by any evidence and left the jury to surmise and speculate on any amount which should be deducted. Instruction F should have been given.

The effect of defendant's Instruction D is to withdraw from the jury's consideration any damage to plaintiffs' farm as a whole due to the reduced market value thereof, because of the ruts and holes made in the right-of-way by heavy machinery during the construction of the transmission line. Plaintiffs contend they were entitled to show the depreciation of the market value of the farm as a whole because of such damage.

Over defendant's objections, plaintiffs and their witnesses testified that the market value of the farm as a whole had depreciated in amounts ranging from $1,500 to $5,000. But they also testified that it would cost only $500 to plow, fertilize and reseed the 25 acres within the right-of-way, and that more than half of that work had already been done with farm machinery. Plaintiff James Beaty was asked:

"Q. Are you acquainted with what the reasonable cost would be in seeding, plowing, finishing and reseeding an acre of bluegrass? A. Yes, I should think it would be $20 per acre anyway. * * *

"Q. Would that be your opinion of the reseeding cost of this easement? A. Yes, sir.

"Q. What would be necessary for you to do to get this easement back in a sod similar to the sod that was there prior to the spring of 1953? A. Well, the ground would have to be plowed, and the places where there is erosion, that would have to be filled up or a lot of fertilizer put on and then it would have to be seeded. * * *"

Plaintiff Lewis Beaty testified:

"Q. What would you consider would be a fair cost to plow up and reseed that 25 acres back into bluegrass? A. It would be at least $20 an acre, * * *".

Other witnesses testified to the same effect. Defendant's evidence was that the 25 acres could be restored for an amount much less than plaintiffs' estimate. However, that would be a jury question.

The measure of damages to real estate is clearly stated in Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158, 164, wherein it is said: "The general rule is that the measure of damages to real estate is the difference in the value of the land before and after the injury by trespass or negligence. However, where damaged land or a building thereon can be restored to its former condition, at a cost *less* than the diminution in value, the cost of restoration may be recovered. * * *" The court also quoted with approval from a New York opinion the conclusion that " 'such cost of restoration is the proper measure of damages'." Hartshorn v. Chaddock, 135 N.Y. 116, 31 N.E. 997, 17 L.R.A. 426. The evidence in the instant case is that the land, within the right-of-way, can be restored for much *less* than the estimated damage to the tract of land as a whole and that is the measure of damage which should be submitted to the jury. Not only that, but we gather from the record that plaintiffs seek to recover the cost of restoring the land within the right-of-way and also the depreciation of the market value of the farm as a whole. This would be improper, they cannot claim both elements. The court should have given defendant's Instruction D.

■ Because of our conclusions relative to plaintiffs' Instruction 5, we need not discuss defendant's proffered Instruction E.

The material part of plaintiffs' Instruction 5 reads:

"The Court instructs the jury that if under the evidence and instructions you find the issues for the Plaintiff in this case, then it becomes your duty to allow such a sum in damages as you may find from the evidence will be fair and reasonable compensation for any damages caused to Plaintiffs' land described in said Transmission Line Easement, growing crops, blue grass sod and pasture, growing trees and fences by reason of the Defendant's negligence, if you so find, in the construction, maintenance or operation of said electric line or system. * * *"

This instruction is very general, and apparently attempts to submit as an element of damage the difference in the market value of plaintiffs' land before and after the construction of the power line, which we have held is not the proper measure of damage under the evidence; and also submits the damage to "growing crops" without informing the jury of the method of arriving at such damage; that is, by deducting from the market value of the crop the cost of harvesting, processing and marketing the same. Since this case must be retried, plaintiffs will no doubt redraft their damage instruction, setting forth the proper measure of damages of the various elements. It cannot be approved in its present form.

■ Plaintiffs contend that if the defendant considered the instruction too general, it should have offered an instruction limiting or qualifying the various elements of damages set out in their instruction. The weakness of this contention is that the instruction included two substantial elements of damage which were not supported by the evidence, and for which they were not entitled to recover under the evidence. A clarifying instruction could not correct that defect. Plaintiffs cite Happy v. Kenton, supra, in support of the general nature of the instruction on damage to the crop. However, in that case, 247 S.W.2d 705, the court points out that plaintiff's evidence did take into account the labor and expense of maturing, caring for and marketing the crop. That is precisely what plaintiffs' evidence did not do in this case.

■ Plaintiffs also argue that the verdict and judgment was for the right party and should not be reversed "even though an erroneous instruction is given by the court * * *". The cases cited in support of this proposition have no application to the facts and issues under consideration. Furthermore, we cannot correct the error by ordering a remittitur. There is no basis upon which we could arrive at the amount to be remitted. See Morrill v. Alexander, supra.

There is no doubt but that the plaintiffs are entitled to substantial damages, and upon a retrial, the evidence will be confined to the proper elements and measure of damages, as defined in the cases cited supra, and the instruction will properly direct the jury on the elements to be considered in arriving at its verdict.

The judgment is reversed and the cause remanded.

BROADDUS, J., not participating.