**DICKEY CO., INC., Plaintiff-Respondent,**

**v.**

**F. A. KANAN et al., Defendants-Appellants.**

**No. 9215.**

Missouri Court of Appeals,
Springfield District.

Oct. 10, 1972.

Richard M. Webster, Myers, Webster, Perry & Elliston, Webb City, for defendants-appellants.

Blanchard, Van Fleet, Robertson & Dermott, Joplin, Kirby, Lewis & Cohick, Springfield, for plaintiff-respondent.

HOGAN, Judge.

This is an action to recover a real estate broker's commission. Trial to a jury has resulted in a verdict and judgment for the plaintiff in the sum of $16,200. Defendants have appealed, alleging error in the giving of Instruction No. 2, plaintiff's verdict-directing instruction.

"In the early Spring of 1969, probably February or March," plaintiff was engaged by a Kansas City real estate firm to find a site upon which to locate a restaurant, and to assist in the negotiation of a long term lease on the premises selected. Plaintiff found a suitable location and over a period of several months performed various services resulting in the execution of a 20 year lease between defendants as lessors and a corporation operating as "Denny's Restaurants" as lessee. The transaction finally embodied in the lease is rather complicated and need not be discussed in detail here; it is sufficient to say that it involves the construction of an expensive building by the defendants, and the demise of both the building and the land upon which it is built for a period of 20 years, with an option to renew for 10 years, at an annual rental somewhat in excess of $25,000. In this court, the performance of services entitling plaintiff to a commission stands admitted, and it is agreed that the value of plaintiff's services is $16,200. Defendants also admit their obligation to pay that sum; the only issue in the case is the method of payment agreed to, and that is the only matter we shall discuss.

Plaintiff's evidence, primarily from Mr. John Dickey, was that the commission was first discussed in July 1969 when he delivered the lease (in several copies) to Mr. Ancell's office for defendants' signatures. Mr. Dickey's testimony was that he and Mr. Ancell, an officer of defendant Ancell Enterprises, Inc., had at first disagreed as to the amount of the commission to be paid, but then "we negotiated and we finally agreed on the $16,200." "The only dis-

agreement we had," Mr. Dickey continued, "was . . . that I wanted fifty percent in cash and fifty percent in five years, and he [Ancell] made [a] proposition how they would pay it." At Ancell's direction, Mr. Dickey wrote out defendants' counter-proposal on a prepared form. This document, which was offered and received as defendants' exhibit "A", is in words and figures as follows, with the handwritten parts enclosed in parentheses:

### "COMMISSION AGREEMENT

The undersigned hereby acknowledges the receipt of good and valuable services rendered by the DICKEY CO., INC., in effecting the lease of their property located at (3602 Range Line to Denny's Inc.) now owned by the undersigned, as per terms of a certain Real Estate Lease Agreement, executed of even date herewith, which Agreement is incorporated and made a part hereof. In consideration of such services the undersigned hereby agrees to pay to the order of DICKEY CO., INC., the sum of (Sixteen Thousand Two Hundred) DOLLARS ($16,200.00), payable as follows: (Five Hundred forty & no/100) DOLLARS ($540.00) cash at the time of closing of transaction, and (Five hundred forty & no/100) [sic] DOLLARS ($540.00) [sic] by undersigned's promissory note executed of even date herewith, payable in (348) monthly installments of (Forty-five) DOLLARS ($45.00) each, commencing (4) months from the date of said note together with accrued interest on the unpaid balance of ——% per annum. (The commission is to be enclosed in the lease.)

(Ancell Enterprises Inc.

Larry E. Ancell Vice Pres.)"

The words "at the rate of" are stricken over and the words "no interest" have been written in and initialled "L. A." This written proposal is, of course, patently ambiguous; it calls for the payment of $16,200 by paying $540 at the time of execution of the lease and an additional $540 in 348 monthly installments of $45 each. However, payment of 348 monthly installments

of $45 would amount to $15,660, and the total sum paid if one paid $540 at once and thereafter paid 348 monthly installments of $45 would be $16,200, the amount all parties agree is due. Defendants' evidence was that what Mr. Ancell communicated to Mr. Dickey was an offer to pay $540 at once and the balance in monthly installments, without interest. In any case Mr. Ancell signed the form which is set out, but Mr. Dickey did not. Mr. Dickey said, " 'Larry [Mr. Ancell], I can't accept it', and I left it in that [sic] terms [but] took a copy of it with me because that is the way he agreed to what he would do." Mr. Dickey thereupon "picked up the leases, put them back in [his] briefcases [sic] and started out the door."

At this point, defendant Fannun Kanan appeared and the three men decided to go out for a "cup of coffee". Plaintiff's evidence was that the three men spent "about three hours" discussing the commission and finally Mr. Kanan said: "Don't worry about it, John. Let's live and let live, what difference does it make if I borrow $150,000 or $158,000 in order to build the building?" Mr. Kanan then assured Mr. Dickey that "[w]e'll take care of you when the lease is signed." Mr. Dickey, "believ[ing] the man completely", left the leases with the defendants. Mr. Dickey stated unequivocally that he never signed the "Commission Agreement", because he was obligated to protect the interests of his associates, as well as his own. The substance of this negotiation was gone over a number of times during Mr. Dickey's examination and cross-examination, and in addition to what we have recited, it was made clear that Mr. Dickey had never made any written proposal concerning the payment of his commission, that he had made demand for his commission, and that no part of it had been paid.

Plaintiff also had testimony from a Mr. Stevens, who was employed by the Kansas City real estate firm, but it adds little to what we have already narrated. The substance of Mr. Stevens' testimony was that he had contacted both Mr. Ancell and Mr. Kanan by telephone to demand payment of the commission; both had indicated agreement that the commission was due, but had made excuses for nonpayment.

Mr. Ancell and Mr. Kanan testified for the defendants. Mr. Ancell's testimony was in substance that he and Mr. Dickey had agreed to the proposal set out in the "Commission Agreement", which according to Ancell was to pay the sum of $540 at once and the balance in 348 monthly installments of $45 each. According to Mr. Ancell, Mr. Dickey took the "Commission Agreement" with him after Ancell had initialled certain changes (apparently the omission of interest) made by agreement. Some time later Mr. Dickey indicated that his associates in Kansas City would not accept the commission agreement Ancell had signed. Mr. Ancell had deposited the initial $540 payment to Mr. Dickey's credit, but Mr. Dickey had refused to accept it.

Mr. Kanan recalled making the statement "live and let live", which is mentioned over and over again in the record and the briefs, but his recollection was that he had been unaware that any commission at all was to be paid and had simply said "Okay, live and let live" to indicate reluctant consent to the payment of a commission. Mr. Kanan categorically denied that he had agreed to pay the sum of $16,200 in a lump sum or in two installments of $8,100. According to Mr. Kanan, Mr. Dickey had said nothing about an $8,100 payment at any time, nor had he even mentioned a payment of $16,200. Mr. Dickey had come to Mr. Kanan's home once, asking for a payment of $5,000, "because [it was] urgent—and the people in Kansas City [were] breathing in [sic] his neck." This, in capsule form, is the substance of the evidence presented concerning payment of the plaintiff's commission.

The defendants' sole assignment of error is directed to Instruction No. 2, plaintiff's verdict-directing instruction. The plaintiff contends that the instruction is not before us for review because it is not set out in defendants' brief as required by Rule

83.05(a).[1] The defendants maintained on oral argument that Instruction No. 2 was omitted from their brief through a printer's error, and that in any event they complied with the substance of Rule 83.05(a) because they set out the "questioned portion" of that instruction in their brief. Part of the instruction is indeed set out in the "conclusion" which follows the argument part of defendants' brief.

Plaintiff's point is not without merit. We may note in passing that since January 1, 1972, the requirement that questioned instructions be set out in the appellant's brief has been modified by the promulgation of Rule 84.04. Rule 84.04(e) provides that "[i]f a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." It must be conceded that defendants' brief is deficient. Nevertheless, it is our duty to dispose of the appeal on its merits if possible, Rule 84.14; State ex rel. George v. Mitchell, Mo.App., 230 S.W.2d 116, 120 [5], and despite its deficiency, the defendants' brief has been sufficient to enable the plaintiff to identify the single issue presented and sufficient to enable this court to ascertain with reasonable certainty and without undue effort what that issue is, and the nature of defendants' contention with reference thereto. See Mills v. Keasler, Mo., 395 S.W.2d 111, 112 [1]. The defendants' brief is not a bare invitation to become their advocate and search the record for possible error, as were the briefs considered in State ex rel. Mayfield v. City of Joplin, Mo.App., 485 S.W.2d 473 and Yates v. White River Valley Electric Cooperative, Mo.App., 414 S.W.2d 808. As in McQuate v. White, Mo., 389 S.W.2d 206, 209–210 [1], there is but a single obvious question presented, and defendants' contention that Instruction No. 2 was prejudicially erroneous will be considered on its merits.

The instruction complained of is M.A.I. 29.02, modified by the plaintiff. It reads as follows (our emphasis):

"Your verdict must be for the plaintiff if you believe:

First, plaintiff was a licensed real estate broker, and

Second, *plaintiff and defendants agreed that plaintiff should receive a lump sum of $16,200.00 as commission* or, alternatively, a payment of $8,100.00 in cash and $8,100.00, plus interest, over a period of five years as commission, if defendants' property was leased as a result of plaintiff's efforts, and

Third, defendants leased the property as a direct result of plaintiff's efforts."

Defendants' sole complaint of this instruction is that plaintiff's first disjunctive hypothesis—that plaintiff and defendants *agreed* that plaintiff should receive a lump sum of $16,200—is wholly without evidentiary support, and therefore Instruction No. 2 should not have been given. To support this contention, defendants cite a number of cases, including Wolfe v. Harms, Mo., 413 S.W.2d 204, 209–210 [1] and Shelton v. Bruner, Mo.App., 449 S.W.2d 673, 676 [1], all of which hold that there must be evidence to support every hypothesis submitted in a verdict-directing instruction. The plaintiff answers this contention on the merits by citing a number of cases, for example Isaac T. Cook Company v. Bank of St. Louis, Mo.App., 297 S.W.2d 607, 611 [6] and Doerflinger Realty Company v. Fields, Mo.App., 281 S.W.2d 609, 613 [5–7], which set out the general principle that ordinarily money is due and payable when there is a legal obligation to pay and the time for payment has arrived, and if no time for payment is fixed, the law will deem the account payable when the payee has fully performed his obligation and nothing remains to be done except to make payment. See Padgett v. Brezner, Mo.App., 359 S.W.2d 416, 424 [8]. The plaintiff applies this principle to this case by arguing

---

1. References to rules are to Missouri Rules of Court (1972) and V.A.M.R.

in its brief that "[t]herefore, unless [defendants] clearly established that there was a contract or instrument executed by the parties and binding upon the parties which clearly altered the obligation to [make] payment in full upon completion of the services provided by the [plaintiff] then the [defendants] are relegated and consigned to the position of making payment to [plaintiff] of a lump sum of $16,200 by reason of the legal presumption that payment was due upon completion of performance by [plaintiff]." In other words, as we understand the plaintiff, Instruction No. 2 is appropriate to submit and does submit disjunctively: a) that the parties had no agreement concerning the time of payment and therefore the commission was due and payable in full when plaintiff had fully performed, or b) that the parties agreed plaintiff was to receive $8,100 at the time the lease was executed and $8,100 plus interest over a period of five years.

■ We cannot agree that such is a proper construction of Instruction No. 2, nor that it would be so understood by a jury. The obligation or promise to pay a sum of money due for services rendered or goods delivered at once upon performance of the services or delivery of the goods when no time for payment is fixed or agreed upon is a matter of legal presumption, or perhaps more properly, an intention fictitiously imputed to the parties to avoid indefiniteness in the terms of the contract. Such is the language of our courts and the tenor of the general authority. So, in the *Doerflinger* case, supra, 281 S.W.2d at 613 [6], it was stated that the time for payment may be fixed by the instrument, or by the law itself, and "[w]hen not fixed by the instrument *the law will deem* the amount due and payable" when the payee has fully performed. Putting the same principle differently in White v. Meiderhoff, Mo.App., 281 S.W. 98, 99–100 [1], this court held that a debt evidenced by a note was payable on demand, *since there was no agreement* as to the time of payment. In Lokey v. Rudy-Patrick Seed Co., Mo.App., 285 S.W. 1028, 1033 [14], it was held that if a contract of sale is silent as to the time for payment, *the law implies* that payment shall be made on delivery (all emphasis ours).[2] The words "agree" and "agreement", on the other hand, ordinarily carry the connotation of a contract or express promissory covenant.[3] Manifestly it would be improper, in fact inherently contradictory, to use the same verb—"agree"—to describe both a promise implied by law in the absence of an agreement and an express promissory covenant. We reject the plaintiff's argument that its first disjunctive hypothesis appropriately submitted defendants' implied obligation to pay the full commission upon the execution of the lease. What the instruction submits as a first alternative hypothesis is that the defendants expressly or by their conduct consented to pay the entire commission in a lump sum as soon as plaintiff had completed its performance.

■ The defendants' point is therefore well taken. Perhaps Mr. Dickey's account of Mr. Kanan's remarks—"what difference does it make if I borrow $150,000 or $158,000 in order to build the building"—lends credence to plaintiff's second factual hypothesis, but we find nothing in the record to warrant a finding that defendants either expressly or by their acts and conduct agreed to pay the entire $16,200 in a lump sum. Mr. Dickey testified that he and the defendants agreed upon the reasonable value of his services, but he further stated than when he proposed a payment of $8,100

2. See also Atlantic Terra Cotta Co. v. Chesapeake Terra Cotta Co., 96 Conn. 88, 113 A. 156, 157 [2] ; Steen v. Rustad, 132 Mont. 96, 313 P.2d 1014, 1021 [14] ; Keister v. Wade, 191 App.Div. 870, 182 N.Y.S. 119, 122 ; 1 Williston, Contracts, § 38, p. 103 (rev. ed. 1936).

3. Newport v. Hedges, Mo.App., 358 S.W.2d 441, 445 [3] ; Fish v. Fish, Mo.App., 307 S.W.2d 46, 50 [4], and authorities cited marginally notes 6 and 7 ; Mackey v. Truchon, 171 Mo.App. 42, 47, 153 S.W. 502, 503. We do not overlook the fact that these words might be appropriate to describe assent or a contract implied *in fact*, as distinguished from a contract implied *by law*. See Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 1132, 219 S.W.2d 333, 338 [5, 6] ; 8 A.L.R.2d 710, 719 ; 1 Williston, Contracts § 3, pp. 6–10.

at once and payment of the remaining $8,100 over a period of five years, defendants did not agree but made a counterproposal to which he could not consent. The plaintiff is in no way aided by the defendants' evidence; defendants maintained that they agreed to pay $540 at once and the balance in 348 monthly installments. Since the jury was instructed upon a theory of which there was no proof, the giving of Instruction No. 2 constituted reversible error. Hardy v. St. Louis-San Francisco Railway Company, Mo., 406 S.W.2d 653, 659 [6]; Johnson v. Bush, Mo.App., 418 S.W.2d 601, 609 [9]; Whitehead v. Fogelman, Mo.App., 44 S.W.2d 261, 263 [5].

For the error noted, the judgment is reversed and the cause is remanded.

TITUS, C. J., and STONE, J., concur.