**SOUTHERN MISSOURI DISTRICT COUNCIL OF the ASSEMBLIES OF GOD, Plaintiff–Respondent,**

v.

**Morrison HENDRICKS and Madgie Hendricks, his wife, Defendants–Appellants.**

No. 16229.

Missouri Court of Appeals, Southern District, Division Two.

April 2, 1991.

John D. Compton, Springfield, for defendants-appellants.

Scott B. Stinson, Mountain Grove, for plaintiff-respondent.

HOGAN, Judge.

This appeal arose out of a court-tried boundary dispute between the defendants and their church, the Ava Assembly of God, hereinafter referred to as the Assembly. In 1981, the Assembly deeded a tract of land to the defendants. The conveyance recited that the land was being conveyed to the defendants as husband and wife, and described the tract involved as follows:

> All that part of the East 75 yards of the NE ¼ of NE ¼ of Section 15, Township 26, Range 16, which lies East of Missouri State Highway No. 5 as now located, except for the North 456 feet. Containing 3.5 acres, more or less.

This conveyance of realty was part of a broader transaction between the Assembly and the defendants. The trial court had credible evidence before it indicating that in 1981 the defendants lived at Ozark, in Christian County, but had a relative at Squires, which is in Douglas County, south of Ava. The defendants were looking for land to buy so they could construct an "earth-sheltered" home. It was suggested that the Ava Assembly might sell some land to the defendants, and the Assembly made a small plot available. At the time the defendants bought land from the Assembly, the defendants loaned the church $36,065.52. According to Mrs. Hendricks, the pastor of the Ava church "... told us they was in a hard bind, and we'd sold our cattle; and so [Mr. Hendricks] said, 'Well, we'll loan the church that much and get them on their feet.'" Thereafter, the defendants bought their land for $10,500, "and so then the next thing was the bus. [Mr. Hendricks] loaned on the bus...."

The loans were repaid and the church flourished. The defendants constructed a residence south of the church. Reverend Ivie, pastor of the church, was replaced and one Lawrence Cook became pastor of the Ava Assembly. For whatever reason, ill feeling developed between the defendants and Reverend Cook, and eventually the defendants "placed charges" against Reverend Cook. The charges were tried before a group of church officials which, according to one witness, amounted to an ecclesiastical court. This tribunal concluded that Reverend Cook was innocent of any wrongdoing and that the defendants had been contentious and had "created the situation." The defendants' memberships were "placed in suspension," which meant that they were still members of the church but were unable to vote at business meetings.

Shortly thereafter, defendants erected a fence which generally followed the line they believed to be the boundary between their property and that of the Assembly. The Assembly had two complaints about the fence. For one thing, the fence was in the wrong place and for another, it was so crooked "[the Assembly] couldn't determine exactly where the lines ran and what it represented."

In February 1986 the Assembly retained counsel in order to settle the dispute. Counsel advised the defendants that the fence (referred to as the "first fence") encroached upon the church's property. Counsel advised the defendants to have a survey made and to put the fence on the proper boundary line. The defendants had a survey made and discovered that the tract which had been deeded to them contained only 2.16 acres, whereas the conveyance recited that it contained 3.5 acres. If the common boundary line were extended to enclose 3.5 acres, it would run through the church building. The defendants contented themselves with construction of a new fence approximately 150 feet south of

the church. This fence, referred to as the "second fence," effectively obstructed passage to and from the church.

This litigation followed. The Assembly filed (and later amended) a three-count petition. In Count I, the Assembly sought a declaratory judgment establishing the boundary line between the tracts occupied by the Assembly and that parcel deeded to the defendants and further sought injunctive relief requiring the defendants to remove the second fence. In Count II, the Assembly sought damages for trespass. In Count III, the Assembly petitioned the court for damages for malicious prosecution and battery.

The defendants filed an answer and also filed a counterclaim laid in four counts. In their first count, the defendants sought judgment of the trial court declaring their rights under the contract as purchasers of land from the Assembly, construing the said contract and requiring the Assembly to convey the entire 3.5 acres it had contracted to sell. In Count II, the defendants sought damages for misrepresentation and requested specific performance of the Assembly's contract to convey 3.5 acres of land to them. In Count III, the defendants prayed damages for fraud committed by an agent of the plaintiff, and in Count IV prayed damages for assault and battery committed by agents of the Assembly.

The case was tried by fits and starts, but on June 30, 1988 the trial court heard evidence on Counts I and II of plaintiff's amended petition and Counts I, II and III of defendants' counterclaim. Prior to trial, the court had ordered a separate trial of Count III of plaintiff's petition and Count IV of the counterclaim. The judgment and order filed January 20, 1989 disposed of the issues tried as follows:

\* \* \* \* \* \*

"1. As to Plaintiffs' Count I, the Court declares that the common boundary between Plaintiffs' and Defendants' lands is that line described by the Schnurbush [sic] survey admitted into evidence as Plaintiffs' Exhibit '11' and marked in red pencil on a xerox copy of said exhibit, which such true copy is attached hereto, marked Exhibit 'A' and made a part hereof by reference as though fully set forth herein. Defendants are hereby ordered to remove at their expense any portion of the existing fence which is now located north of this line described herein.

2. As to Plaintiffs' Count II, the Court finds in favor of Plaintiffs and hereby awards judgment in favor of Plaintiffs for actual damages in the sum One Thousand Dollars ($1,000.00) and grants judgment against Defendants for this amount. The Court further finds that Defendants' trespass was done willfully, wantonly, maliciously and without just cause or excuse and that Plaintiffs are therefore entitled to punitive damages in addition in the sum of Three Thousand Dollars ($3,000.00), and judgment is granted against Defendants in favor of Plaintiffs for this amount.

3. As to Count II of Defendants' Counterclaim, the Court finds in favor of Defendants and against Plaintiffs. The Court assesses Defendants' damages in the sum of Four Thousand Dollars ($4,000.00) and judgment is hereby granted against Plaintiffs and in favor of Defendants for this amount.

4. As to Counts I and III of Defendants' Counterclaim, the Court finds in favor of Plaintiffs and against Defendants.

5. Further, the Plaintiffs are ordered to convey to Defendants an easement for purposes of ingress and egress twelve (12) feet wide over the existing driveway. The Court appoints Willard Schnurbush [sic] to inspect the land, to write a legal description of the easement, and to report his description to the Court so that it may be made a part of the final judgment. Mr. Schnurbush's [sic] fees are to be taxed as costs."

\* \* \* \* \* \*

The defendants have appealed from that part of the judgment and order disposing of Counts I and II of plaintiff's petition. The court found, as required by Rule 74.01(b), that there was no just reason to delay entry of a final judgment on the

counts submitted for trial. Rule 74.01(b) vests discretion in the trial court and permits appeals to proceed in due course upon an express determination that there is no just reason for delay. *Landoll by Landoll v. Dovell,* 752 S.W.2d 323, 326 (Mo.banc 1988); *Eyberg v. Shah,* 773 S.W.2d 887, 894 (Mo.App.1989). The decision to enter judgment as to one or more but fewer than all the claims involved and the determination that there is no just reason for delay requires something more than a summary declaration to that effect, *Eyberg v. Shah,* 773 S.W.2d at 894–896, but, without going into detail, we have examined the record and have concluded that the trial court did not abuse its discretion in making the "express determination" under Rule 74.01(b), thereby permitting this appeal.

It should further be noted that both defendants expired after the notice of appeal was filed in this case. Upon motion, one Margaret Fay Sanders was substituted for both defendants. On the record before us, the substitution appears to be proper.

In this court, the defendants have briefed and presented four assignments of error. The arguments presented in support of the four "Points Relied On" are very diffuse and confuse a number of distinct legal principles, but this case has been pending for nearly five years and it is our duty to dispose of the cause finally upon its merits, if that can be done. Rule 84.14; *Dickey Co., Inc. v. Kanan,* 486 S.W.2d 33, 36 (Mo.App.1972); *State ex rel. George v. Mitchell,* 230 S.W.2d 116, 120 (Mo.App. 1950). In this case, we cannot finally resolve the appeal without remand, but we shall take up and consider the defendants' four assignments of error as it is given to us to understand them.

## I

Defendants' first point, as presented, is that "the trial court erred in granting sepa-rate plaintiff Southern Missouri District Council of the Assemblies of God judgment on Count I of its second amended petition and declaring that the common boundary between the parties' lands is that line described by plaintiff's trial Exhibit '11' because the undisputed evidence was that the original agreement was a sale by the acre with defendants to receive three and one-half (3½) acres, wherefore defendants were entitled to have the common boundary line declared to be that line described by defendants' trial Exhibit 'B'."

■ In order to illustrate our opinion, particularly as it concerns this point, we have prepared a diagram based on one of the several surveys received in evidence. The diagram is not to scale and is not intended to have any force or effect other than to illustrate the conclusions of the court.[1] What the defendants contend, as we understand their brief, is that they were entitled to specific performance of their agreement to purchase land from the plaintiff, and an order granting them the relief to which they were entitled would fix the common boundary of the parties' land along the line marked "A–B" on our diagram. Paragraph 1 of the trial court's order fixed the common boundary between the parties' land as "that line described by the Schnurbush [sic] survey admitted into evidence as Plaintiffs' Exhibit '11' and marked in red pencil on a xerox copy of said exhibit...."

Of course, the boundary "marked in red" did not transfer as such, but such a common boundary would enclose a 2.16–acre tract corresponding to the fractional description found in the deed executed by the Assembly, and marked as the line between the letters "D" and "E". In other words, a metes and bounds description of "all that part of the East 75 yards of the NE ¼ of the NE ¼ of Section 15, Township 26, Range 16, which lies east of Missouri State

---

1. Several surveys were admitted in evidence. There was some evidence that both the Schnurbusch survey, received as plaintiff's exhibit 7, and another survey, prepared by Rozell Engineering Company and received first as plaintiff's exhibit 2 and later as defendants' exhibit B, were commenced from a corner located by the original government survey, as required by our case law. See *Carroz v. Kaminiski,* 467 S.W.2d 871, 872–73 (Mo.banc 1971), and *Fuller v. Padley,* 628 S.W.2d 719, 721 [1] [2] [3] (Mo.App. 1982). Our diagram is, for convenience, taken from the Rozell survey, received as plaintiff's exhibit 2 and defendants' exhibit "B".

Highway No. 5 as now located, except for the north 456 feet," assuming the description ran from the letter "E", would close with a call for the course and distance represented by the line from "D" to "E". A description which enclosed 3.5 acres would have as its northern boundary the line running from "A" to "B" and would include part of the church building.

Implicit in the defendants' argument is the existence of a valid contract for the sale of land. In our opinion, and again without going into detail, the memorandum upon which the defendants relied, Exhibit "E", is a mere statement of account between the parties. It does not contain the defendants' names, any promises between the parties, nor any description of the land to be conveyed. It is not signed on behalf of the Assembly by anyone. One of the items of the memorandum refers to a "Land Sale 3½ acres." Another notation reads "Total to be Financed and to be secured by Note and Deed of Trust." The remainder of the items seem to refer to other loans made to the Assembly, the rate at which those loans were to be repaid, the rate of interest to be paid, and other matters not referable to any sale of land.

Several general principles of law govern the defendants' contention that they were entitled to specific performance. They are: a) in order to justify specific performance, a contract must not be indefinite, uncertain or incomplete, for the court will not make a contract for the parties; *Biggs v. Moll,* 463 S.W.2d 881, 887 (Mo. 1971); *Three–O–Three Investments, Inc. v. Moffitt,* 622 S.W.2d 736, 738 (Mo.App.1981); b) the contract must be complete in its essential and material terms, and capable of being enforced without adding to its terms. *Ray v. Wooster,* 270 S.W.2d 743, 751 (Mo.1954); *Three–O–Three Investments, Inc. v. Moffitt,* 622 S.W.2d at 738. The "essential terms" of a contract for the sale of real property are: 1) the parties; 2) the subject matter; 3) the promises upon both sides; 4) the price; and 5) the consideration. *Ray v. Wooster,* 270 S.W.2d at 752; *Three–O–Three Investments, Inc. v. Moffitt,* 622 S.W.2d at 738. Exhibit "E"

simply does not contain nor state the "essential terms" of a contract for the sale of land as stated in *Ray v. Wooster,* 270 S.W.2d at 752, and does not furnish a basis for a decree of specific performance.

The court is aware that courts of equity will and do enforce oral contracts to convey realty despite the bar of the statute of frauds either by decreeing specific performance or, in some cases, by an award of damages in lieu of specific performance. *Jones v. Linder,* 247 S.W.2d 817, 819 [3] (Mo.1952); *Rockhill Tennis Club of Kansas City v. Volker,* 331 Mo. 947, 969, 56 S.W.2d 9, 18 [7] (1932). Equitable enforcement of contracts to convey realty is granted when one seeking such enforcement adduces proof of performance of acts which are referable to or, more accurately, are in themselves cogent evidence of the existence of some contract to convey; and if it appears that such acts have been done in reliance upon the contract of which the acts are evidence, and, as a result of the acts so performed, the positions of the parties have been so materially changed that it would be grossly unjust to permit reliance on the statute of frauds; and if it appears that the remedy of restitution is inadequate, then the one who would suffer injustice may prove the terms of the verbal contract, and if his proof establishes a complete and definite, fair contract to convey which has been pleaded and proved by clear and cogent evidence, the party seeking specific performance of the oral contract to convey may have it or damages in case specific performance is impossible. *Jones v. Linder,* 247 S.W.2d at 820 [5], citing *Jones v. Jones,* 333 Mo. 478, 487, 63 S.W.2d 146, 151–52 [8–11], 90 A.L.R. 219, 227–28 (1933); *Roberts v. Clevenger,* 225 S.W.2d 728, 729 [2–4] (Mo.1950), and *Scheerer v. Scheerer,* 287 Mo. 92, 103, 229 S.W. 192, 196 [1] [2–4] (1921).

It is not, however, the duty of this court to develop theories of error and search for reasons to reverse the judgment entered. The ruling as it comes to us is presumptively correct and the defendants have the burden of demonstrating that the judgment is erroneous. *Massman Con-*

*struction Co. v. Kansas City*, 487 S.W.2d 470, 478 [6] (Mo.1972); *Pallardy v. Link's Landing, Inc.*, 536 S.W.2d 512, 515 (Mo. App.1976); *Weston v. Great Central Insurance Company*, 514 S.W.2d 17, 21 [1–3] (Mo.App.1974). The defendants have made no effort to demonstrate to this court that the agreement they made with the Assembly satisfies the criteria set out in *Jones v. Linder*, 247 S.W.2d at 820 [5], and we decline to develop, sua sponte, a reason to reverse the trial court's judgment as to Count I of the petition. The court's ruling as to Count I must be revised, but otherwise it is affirmed.

## II

The defendants' second point, slightly paraphrased, is that the trial court erred in awarding the plaintiff $1,000 actual damages for trespass as alleged in Count II of the plaintiff's (amended) petition.

It will be recalled that in 1986 counsel for the plaintiff requested that the defendants move the fence they had constructed to mark the common boundary between their property and that retained by the Assembly. The fence is marked as the "first fence" on our diagram. The defendants had their land surveyed. It was discovered that the tract they occupied contained only 2.16 acres. If the northern boundary line of the defendants' property were moved north to include 3.5 acres, the defendants' northern boundary line would run through the church building. The defendants contented themselves with construction of a second fence 150 feet south of the church, effectively enclosing the parsonage.

This second fence had no gates and obstructed passage between the church and the parsonage. Shortly after the second fence was constructed, the defendants were seen moving furniture, blankets and other items into the parsonage, and one witness testified that defendants' relatives were preparing to move into it. The defendants, as we understand the testimony, occupied the parsonage for approximately one week. The plaintiff then obtained an injunction requiring the defendants to remove the fence and to return the parsonage and the disputed land (i.e., the tract between the first and second fences) until a final determination of the parties' claims could be made.

The defendants argue that the evidence did not establish the sustentation of any damage by plaintiff and further maintain that the damages testified to were calculated by an improper measure.

 It is well established that the measure of damages for injury to real property is the difference in value of the land before and after injury, but when the damaged property can be restored to its former condition at a cost less than the diminution in value, the cost of restoration is the proper measure of damages. *Curtis v. Fruin–Colnon Contracting Co.*, 253 S.W.2d 158, 164 (Mo.1952); *Sumpter v. J.E. Sieben Construction Co.*, 492 S.W.2d 150, 154 (Mo.App.1973); *Welker v. Pankey*, 225 S.W.2d 505, 508 (Mo.App.1949). Other measures of damages for trespass have been suggested, but we believe one of the two measures suggested—either the diminution in value or the cost of restoration—would be appropriate in this case. It has been said that:

> "Actual damages resulting from wrongful conduct are normally allowed in situations involving a single or isolated trespass.... The 'before and after' value test and the calculation of restoration costs have both been used to determine actual damages."

5 R. Powell and P. Rohan, *The Law of Real Property*, § 707.3[1][b], p. 64A–60 (1991). It is also appropriate to allow the fair rental value of the land as damages when the owner has been deprived of the land, D. Dobbs, *Remedies*, § 5.8, p. 365 (1973), and in this case there may have been a loss of rental value because of the defendants' occupation of the parsonage.

 The only damage inferable from the record, however, is that sustained because the first fence encroached upon the plaintiff's property a distance of six feet on the west side. The second fence enclosed a good deal more of the tract occupied by the church, including the parsonage and the

area surrounding it. The defendants removed this second fence and relinquished the parsonage one week after the second fence was erected. No evidence was presented establishing the rental value of the parsonage during the time it was held by the defendants. The record does not suggest any significant diminution in value, but more importantly, no competent evidence of the actual damages sustained by the plaintiff appears in the record.

 Reverend Nelson Sachs, district superintendent and president of the Southern Missouri District Council of the Assemblies of God, Inc., which owned the church property, was the witness by whom the plaintiff sought to prove its damages. Reverend Sachs testified that before the second fence was erected, the value of the Assembly's property was between $250,000 and $260,-000; thereafter, in part because of the effect of the litigation upon the Assembly's reputation, the value had diminished to $225,000 to $230,000. On cross-examination, Reverend Sachs testified as follows:

\* \* \* \* \* \*

"Q. Now, you testified as to values of real property. Let me ask you this. What real property have you purchased or sold in Douglas County within the last five years?

A. I don't know that I've purchased any in Douglas County in the last five years.

Q. Okay. Have you sold any real property in Douglas County within the last five years?

A. Not to my knowledge.

Q. Let's make that a little bit further. Have you purchased or sold any real property in Douglas County in the past ten years?

A. No. I have not.

Q. More specifically, have you purchased or sold any real property in Ava—

A. No. No, I—

Q. —within the last ten years?

A. No.

Q. Do you conduct any type of appraisal work on real property in the Ava area, or have you appraised any property in the Ava area within the last ten years?

A. No. My business is with churches, and so I'm not in real estate business.

Q. You're not in the real estate business?

A. No."

\* \* \* \* \* \*

 We agree with the trial court's ruling that the managing officer of a corporation may testify to the value of corporate real property, even though he is not an expert, if he is in fact familiar with the value of the realty. The basis for the admission of such testimony is the corporate officer's unique familiarity with the value of the property. *St. Joseph Light & Power Co. v. Kaw Valley Tunneling*, 589 S.W.2d 260, 269 (Mo.banc 1979); *Krug v. United Disposal, Inc.*, 567 S.W.2d 133, 135 (Mo.App.1978). Such a witness testifies as an owner, and in our view, if it appears upon qualifying voir dire or upon cross-examination that the witness lacks knowledge of the value at issue, or that his opinion is based on an improper standard, a court on appeal may reverse an award of damages for want of substantial evidence to support it. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d 851, 854–55 [1–3] [4] (Mo. App.1978). Defendants' counsel objected to Reverend Sachs' testimony concerning the value in issue on the ground that the witness was not familiar with property values in the Ava area. The objection was overruled and Reverend Sachs' testimony was received. The admission of his testimony, in our view, was prejudicially erroneous.

 We agree that a trespass upon plaintiff's land was established, but we believe the award of damages, which is based on Reverend Sachs' testimony, is not supported by competent and substantial evidence. In this connection, it is argued by the plaintiff, without citation of authority, that the cost of obtaining a survey and its legal expenses should be considered as part of the cost of restoration. We cannot agree. It has specifically been held that expenses of litigation such as surveyor's

fees are not ordinarily recoverable as damages. *Redemption Bond, Lot 231 Bridlespur, 2nd Plat v. Adelman*, 693 S.W.2d 325, 327 (Mo.App.1985); *Gerst v. Flinn*, 615 S.W.2d 628, 632 (Mo.App.1981). Attorney's fees are not recoverable by a successful litigant unless: 1) recovery is provided for by statute or contract; 2) very unusual circumstances exist so it may be said equity demands a balance of benefits; or 3) the attorney's fees are incurred because of involvement in collateral litigation. *Redemption Bond, Lot 231 Bridlespur, 2nd Plat v. Adelman*, 693 S.W.2d at 326; *Cimasi v. City of Fenton*, 659 S.W.2d 532, 537 [14–16] (Mo.App.1983). No statute permits recovery of attorney's fees here; the facts do not support an award because of unusual circumstances or collateral litigation. Plaintiff is mistaken, but we rule on the contention because the same question may arise if there is another trial.

### III

The defendants' third assignment of error is that there is no basis for an award of punitive damages. Because the judgment must be reversed and remanded for a determination of actual damages, we address this contention briefly.

■ Actual or nominal damages must be recovered before punitive damages can be awarded. *Coonis v. Rogers*, 429 S.W.2d 709, 716 [16] (Mo.1968). Nevertheless, our Supreme Court recently undertook a clarification of the order of conduct which justifies an award of punitive damages, *Burnett v. Griffith*, 769 S.W.2d 780 (Mo.banc 1989), and in light of that precedent, we believe an award of punitive damages cannot be justified in this case. For reasons cogently stated in the opinion, the court held in *Burnett* that neither MAI 10.01 nor 16.01 clearly articulated the circumstances which justify punitive damages in a case of intentional tort. Of course, in this case, we are dealing with an intentional tort. In *Burnett*, as we read the precedent, our Supreme Court concluded that § 908(2) of the Restatement (Second) of Torts (1979), properly defines the character of that conduct which will justify an award of punitive

damages. " 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others.' " *Burnett v. Griffith*, 769 S.W.2d at 789, citing § 908(2), Restatement (Second) of Torts.

■ In this case, we find no basis for the conclusion that the defendants entertained any *evil* motive or that they acted with reckless indifference in erecting the second fence. The defendants' conduct was spiteful, perhaps, but we cannot conclude they had an evil motive. Further, they had been instructed by the plaintiff's attorney to have a survey made and to construct their boundary fence along and upon the common boundary indicated by the survey. The defendants may have exercised something less than good faith in the construction of the second fence, but their conduct cannot be properly assessed as being outrageous or recklessly indifferent to the rights of the Assembly. In the circumstances, an award of punitive damages is not justified.

### IV

The defendants' final point is that the trial court erred in ordering the Assembly to grant the defendants an easement over an existing driveway which ran along the west line of the Assembly's land. As we understand the record, the Assembly has granted the easement to the defendants, and the issue which the defendants tender with respect to the driveway has become moot.

The court's judgment on Count I of plaintiff's petition is affirmed, but a more definite decree should be entered, requiring the plaintiff Southern Missouri District Council of the Assemblies of God to execute a deed which describes the defendants' land precisely. It is therefore ordered that the plaintiff prepare and execute a deed which describes the following tract:

"All that part of the East 75 yards of the Northeast Quarter of the Northeast Quarter of Section 15, Township 26 North, Range 16 West, in Douglas Coun-

ty, Missouri, which lies East of Missouri State Highway 5 as now located, except for the North 456 feet"

by metes and bounds, that is, by course and distance. The deed shall be executed by the Southern Missouri District Council of the Assemblies of God and shall designate the person substituted for defendants in this court as grantee. The deed shall recite that it is executed to correct a warranty deed executed by the grantor on December 4, 1981 which is recorded in Book 212 at pages 227–228 of the deed records of Douglas County, Missouri. The restrictive covenants contained in the deed of December 4, 1981 shall be inserted in the deed of correction.

The court's order and judgment as to Count II of the petition is reversed for want of substantial evidence to support the award of actual damages. The cause is remanded for assessment of actual damages. A personal representative shall be appointed by the probate division of the circuit court to defend the action as provided by § 537.021, RSMo 1986. In all other respects the judgment is affirmed.

MAUS, J., concurs.

SHRUM, J., concurs in part, dissents in part, and files opinion.

APPENDIX

N

NE corner of
NE-1/4 NE-1/4
S 15, T 26, R 16

Church

A B

Boundary which would enclose 3.5
acres

TRACT I - Assembly's property

Second fence

Parsonage

First fence

D E Common boundary

Defendants' residence

TRACT II - Defendants'
property

R.O.W. - Hwy. 5

SHRUM, Judge, concurring in part and dissenting in part.

I concur in the disposition of Count I and in the disposition of the judgment for actual damages under Count II. On the issue of punitive damages under Count II, I depart from the majority opinion. Given the defendants' close involvement with the Assembly and its affairs, their failure in challenging the local pastor, and the "suspension" of their church membership, I believe the trier of fact properly could have concluded the defendants' conduct in excluding the Assembly from its parsonage was outrageous, because of either evil motive or reckless indifference to the rights of the Assembly. I believe the evidence does satisfy the standard enunciated in *Burnett v. Griffith*, 769 S.W.2d 780 (Mo.banc 1989). Accordingly, upon remand, I would permit the trial court to consider the issue of punitive damages.